187 N.J. Super. 364 (1983)
454 A.2d 908
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN PHELPS A/K/A J.P., A/K/A JOHNNY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1982.
Decided January 6, 1983.
*365 Before Judges MILMED, MORTON I. GREENBERG and FURMAN.
Salem Vincent Ahto argued the cause for appellant (Taigman & Ahto, attorneys; Joseph Mezzacca, Jr., on the brief).
Victoria Curtis Bramson, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General, attorney; Robin M. O'Brien, Deputy Attorney General, on the brief).
The opinion of the court was delivered by GREENBERG, J.A.D.
An indictment was returned in Morris County on July 22, 1980 against defendant John Phelps and against Thomas DeMarco, Angelo Gerrizzo and Robert Hirtler. Three counts of the indictment charged Phelps with crimes: count 13 of the indictment *366 charged defendant, a police officer employed by the Township of Parsippany-Troy Hills since April 7, 1975, with official misconduct in office with the corrupt purpose to obtain a benefit for himself or another with a value over $200 by failing to report a known gambling operation. N.J.S.A. 2C:30-2(b). Count 14 charged defendant and DeMarco, Gerrizzo and Hirtler with conspiracy to promote gambling. N.J.S.A. 2C:5-2; N.J.S.A. 2C:37-2; N.J.S.A. 2C:37-4. Count 15 charged defendant and DeMarco, Gerrizzo and Hirtler with conspiracy to commit official misconduct. N.J.S.A. 2C:5-2; N.J.S.A. 2C:30-2(b). These defendants had previously served motions to suppress evidence, which was denied. The trial judge on September 26, 1980 ordered that Phelps' trial be severed from that of the other defendants. At the ensuing trial count 15 was dismissed by the judge. The jury found defendant guilty on count 13 and not guilty on count 14. After defendant's motion for a new trial was denied he was sentenced to a five-year term in the New Jersey State Prison. Defendant appeals, raising as grounds for reversal the following issues:
(1) Certain taped conversations of others were improperly admitted into evidence as statements of co-conspirators, without any independent proof of a conspiracy.
(2) The court below erred in denying defendant's motion to suppress the contents of all intercepted wire communications and evidence derived therefrom obtained through the order of The Honorable Arthur J. Blake executed on the 22nd day of October, 1979, and for suppression of the entire contents of all intercepted wire or oral communications together with evidence derived therefrom with respect to an extension of the original order granted by The Honorable Arthur J. Blake by order dated the 9th day of November, 1979.
(3) The contents of the intercepted wire communications and all derivative evidence should have been suppressed below due to the State's failure to comply with the disclosure provisions of N.J.S.A. 2A:156A-17.
(4) The court below erred in overruling numerous objections by defendant which were singularly and cumulatively so prejudicial to defendant as to deny him a fair trial.
(5) The court below committed a reversible error by failing to give a complete charge to the jury regarding the crime of misconduct in office.
(6) The court below committed a reversible error in charging the jury as to the elements of N.J.S.A. 2C:30-2, and in further refusing to vacate the judgment *367 of conviction or in the alternative, mould the judgment to a crime of the third degree.
(7) The sentence of the court below was improper since defendant was denied an opportunity to have a meaningful challenge of the pre-sentence report.
(8) The court below erred in denying defendant's motion for a judgment of acquittal and in denying defendant's motion for a new trial.
The circumstances leading to the return of the indictment are not complicated. Investigator Michael Romano of the Morris County Prosecutor's office was advised by a reliable informant in the late summer or fall of 1979 that Gerrizzo was operating a bookmaking business from his apartment at Knoll Gardens, Lake Hiawatha, New Jersey. Romano was able to obtain confirmation of this information from a second informer. The prosecutor then made application to Judge Blake for an order authorizing the interception of wire communications from the telephone listed to Gerrizzo at the apartment. Judge Blake on October 22, 1979 issued the order valid for 20 days. On the same day the interceptions commenced. On November 9, 1979 Judge Blake extended the order for ten days. Subsequently, Judge Blake authorized the interception of wire communications on a telephone listed to DeMarco.
The intercepted conversations showed that Gerrizzo and DeMarco were part of a bookmaking operation described by a witness at trial as "extremely huge." The prosecutor obtained search warrants for both DeMarco's and Gerrizzo's premises. The warrants were executed November 18, 1979. While the investigators were in Gerrizzo's premises executing the search warrants, one actually received calls from gamblers phoning in their bets. Gambling records were seized at both apartments.
The tapes of the calls made to Gerrizzo's apartment included several from a person who identified himself as "JP" or "John." There was testimony at the trial identifying the voice of "JP" or "John" as defendant's. Defendant placed bets with Gerrizzo for his own account. In addition, he placed bets for a person named William Gotshall, also called "Bill from Bach's." Defendant's involvement in the operation was shown to be more extensive *368 than simply betting since there was evidence that he introduced a new bettor, "Big Pete," into the operation to gamble. The tapes also showed that Gotshall placed bets for defendant. Evidence at trial further established that defendant never reported the existence of the gambling operation to the superior officers in the police department.
Defendant's first contention that taped conversations of other persons were improperly admitted into evidence as statements of coconspirators raises a substantial evidence question. Defendant argues that the trial judge erred in permitting the State to introduce into evidence the conversations between Gotshall and Gerrizzo showing that Gotshall was betting for defendant with Gerrizzo, who was accepting these wagers. He further contends that the judge compounded his error by failing to charge the jury that it should consider the conversations only if it found from evidence independent of the conversations that defendant was involved with them in a criminal conspiracy.
Consideration of this issue requires that we distinguish between admissibility of evidence and whether a jury must ultimately disregard it. Evid.R. 8(2) provides that when the admissibility of evidence is subject to a condition, and the fulfillment of the condition is in issue, the judge must determine whether the condition has been fulfilled. If the judge decides that there is evidence sufficient to support a finding that the condition has been fulfilled, he shall admit the evidence. However, in such a case he is obliged to instruct the jury to consider the issue of fulfillment of the condition and to disregard the evidence if it finds that the condition has not been fulfilled.
Under Evid.R. 63(9) it is clear that if defendant and Gerrizzo were conspiring to promote gambling, an act or statement by Gerrizzo in furtherance of the common design would be admissible against defendant. See State v. Louf, 64 N.J. 172, 177 (1973); State v. D'Arco, 153 N.J. Super. 258 (App.Div. 1977); State v. Boiardo, 111 N.J. Super. 219 (App.Div.), certif. den. 57 N.J. 130 (1970), cert. den. 401 U.S. 948, 91 S.Ct. 931, 28 L.Ed.2d *369 231 (1971). While it is true that Gotshall was not charged in the indictment as a coconspirator, the fact that he was a party to the conversation would not change this result. In State v. D'Arco, supra, 153 N.J. Super. at 263, the court allowed into evidence a conversation between a coconspirator and a person described as a "victim" of the extortion scheme there involved. Gerrizzo's actions in taking Gotshall's bets for defendant effectively treated defendant as involved in the gambling operation and was equivalent to a statement of defendant's involvement. Defendant was tied in to the Gerrizzo-Gotshall conversations by proof that defendant directly called in bets to Gerrizzo. Indeed, defendant and Gotshall bet for each other. Thus, there can be no question but that there was competent proof that Gerrizzo knew that Gotshall was betting for defendant.[1]
A condition prerequisite to admission of the statements is introduction of evidence (other than from the statements themselves) of defendant's participation in the conspiracy. State v. D'Arco, supra, 153 N.J. Super. at 262; State v. Boiardo, 111 N.J. Super. at 231. However it is not clear as to whether the jury must find independently of the statements that the conspiracy existed in order to consider the statements or whether a finding by the judge that there is other evidence of the conspiracy is sufficient to permit the jury to consider them. Certainly a reasonable argument can be made under Evid.R. 8(2) that the jury must find that a conspiracy involving defendant existed on the basis of evidence other than the statements. Indeed, in this State juries have been instructed that they must make such a finding before they may consider a coconspirator's statements *370 against a defendant. See State v. D'Arco, supra, 153 N.J. Super. at 265; State v. Farinella, 150 N.J. Super. 61, 68 (App.Div.), certif. den. 75 N.J. 17 (1977); State v. Hacker, 167 N.J. Super. 166, 174 (Law Div. 1979). But the cases have not definitely established whether such an instruction is required.[2]
This issue has been decided in the federal courts. There the courts, overruling prior practice, are now holding that the instruction is not required. See, e.g., United States v. James, 576 F.2d 1121 (5 Cir.1978), aff'd on reh. en banc 590 F.2d 575, cert. den. 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979); United States v. Santiago, 582 F.2d 1128 (7 Cir.1978).
The reason for the federal rule was explained by the United States Court of Appeals for the Seventh Circuit in United States v. Santiago, supra, 582 F.2d at 1128. That court had prior to its decision in Santiago held that the jury was to be instructed that the acts and declarations of one of the alleged coconspirators made during and in furtherance of the conspiracy could not be used against another alleged coconspirator until it had been established beyond a reasonable doubt by independent evidence that a conspiracy existed and that the other alleged coconspirator was a member of the conspiracy. 582 F.2d at 1132. Thus, it required an instruction similar to that given in New Jersey. In Santiago the court abandoned this rule and announced as follows:
Merely to state that rule raises doubts about its efficacy. Even though the jury was cautioned when a hearsay declaration was admitted, the jury was expected during its deliberations to sort through the evidence and to lay aside the often very prejudicial co-conspirator's hearsay statements and to immunize itself from its influence until it first found by other independent evidence that the conspiracy and the defendant's membership in it had been established beyond a *371 reasonable doubt. The jury was then free to consider the co-conspirator's hearsay declarations. At that point conspiratorial guilt had in theory already been established. The co-conspirator's declarations could only confirm the judgment previously reached. To expect such a precise untainted jury performance must strain the confidence of even the most ardent admirers of the jury system, and is unnecessary. [Ibid.]
The Santiago court, in reaching its result, considered application of Fed.Evid.R. 104. That rule provides in part:
(a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.
(b) Relevancy conditioned on fact. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.
Fed.Evid.R. 104 is similar to Evid.R. 8. In construing the federal rule the court announced that:
Rule 104(a) and 104(b) did not eliminate all ambiguities about who is to decide co-conspirator preliminary questions or by what standard. We believe that the responsibility for admission is to be determined under Rule 104(a) and now rests solely upon the trial judge. There is no further appeal from that ruling on admissibility by the defendant to the jury. The jury, however, still retains its full responsibility to determine the related matters of credibility and weight as it considers all the evidence in determining whether guilt has been established beyond a reasonable doubt.
Whether or not the conspiracy has been established by sufficient, independent evidence, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), so as to permit admission of co-conspirator declarations, we consider to be a matter of competency under Rule 104(a), not conditional relevancy under Rule 104(b). 21 Wright & Graham, Federal Practice and Procedure: Evidence § 5053 at 259-60 (1977); 10 Moore's Federal Practice ¶ 104.13[2], [5] and 104.22[1] (2d ed. 1976). The competence of evidence is determined by whether or not the probability of its reliability is sufficiently great to permit its admissibility. 1 Weinstein's Evidence ¶ 104[05] at 104-40. We do not interpret Rule 104(b) as being applicable in the usual case to the admissibility issue of co-conspirator declarations. [582 F.2d at 1133]
We are impressed with the Santiago ruling and follow it. We hold that a determination of the admissibility vel non of statements of an alleged coconspirator against a defendant is solely a question for the judge. Such statements are admissible provided that the judge decides that independently of the statements *372 themselves there is sufficient evidence in the record to establish that a conspiracy existed and that the defendant was a member of the conspiracy. Thus, evidence of the Gotshall-Gerrizzo conversations relating to defendant was admissible against defendant without a limiting instruction being required that the jury could consider the conversations only if it found independent proof of a conspiracy. Here the jury found defendant not guilty of conspiracy to promote gambling. While we do not know why it reached this finding, it may well have been that the evidence convinced it that defendant was simply a gambler. Nevertheless, there was evidence to support this charge. Defendant placed bets for Gotshall and introduced a new bettor into the operation. Notwithstanding this acquittal, the jury found defendant guilty of official misconduct in failing to report the gambling operation. The evidence fully supported this verdict since it showed that defendant himself, by placing the bets, knew of the operation. We cannot be certain as to whether the evidence of Gotshall's conversations with Gerrizzo contributed to this guilty verdict. But the fact that the jury found defendant not guilty of conspiracy does not change the result we reach since, once the judge determined that the statements were admissible, they could be considered on the substantive count. See State v. Farinella, supra, 150 N.J. Super. at 68-69.
Defendant's sixth contention relating to the charge raises a second substantial issue. He asserts that the charge as to official misconduct was erroneous in describing the elements of N.J.S.A. 2C:30-2. The indictment charged that defendant, with the corrupt purpose to obtain a benefit for himself or another with a value over $200, failed to report a known gambling operation. The judge in his charge to the jury told it that there is a gradation of the offense depending upon whether the benefit obtained or sought to be obtained had a value of $200 or less or over $200. He told the jury that it must consider the $200 figure only if it finds that the benefit was purely monetary or pecuniary. He indicated that if defendant by his conduct *373 conferred a substantial advantage upon some other person that was not specifically pecuniary or monetary, then it need go no further. In that event, assuming that the State had proven the other elements of the offense, then defendant would be guilty of second degree misconduct. If the benefit was solely monetary or pecuniary, the jury would have to determine whether the benefit was over $200. If the jury found that the benefit was over $200, the offense would be of the second degree. Otherwise it would be of the third degree. The jury did not specify whether it found defendant guilty of a second or third degree offense and thus it found defendant guilty of the second degree misconduct, the charge in the indictment.
Defendant contends that the charge was erroneous. He points out that the jury may have believed that the benefit was not pecuniary at all, yet defendant was convicted of second degree misconduct.
N.J.S.A. 2C:30-2 provides as follows:
A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; or
b. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.
Official misconduct is a crime of the second degree. If the benefit obtained or sought to be obtained, or of which another is deprived or sought to be deprived, is of a value of $200.00 or less, the offense of official misconduct is a crime of the third degree.
It is apparent from this section that the Legislature provided that ordinarily official misconduct is a crime of the second degree. Thus, if the Legislature made no statement at all with regard to the value of the benefit sought to be obtained, any official misconduct would be a second degree offense. The Legislature did not provide that official misconduct in which the benefit obtained or sought to be obtained had a value of over $200 would be an offense of the second degree. Therefore, the reference to official misconduct in which the benefit obtained or sought to be obtained is of a value of $200 or less carves out an *374 exception from the more general treatment of official misconduct as a second degree offense.
The legislative approach to official misconduct should be contrasted to its treatment of theft offenses. The Legislature did not provide that theft in general was an offense of any degree. Rather, it specified that theft, depending upon the circumstances, could be a second, third or fourth degree crime or disorderly persons offense. N.J.S.A. 2C:20-2(b). Among the circumstances affecting degree is the amount involved. If it is $75,000 or more, the theft is a second degree crime. N.J.S.A. 2C:20-2(b)(1). If the amount exceeds $500 but is less than $75,000, the crime is of the third degree. N.J.S.A. 2C:20-2(b)(2). Theft is a crime of the fourth degree if the amount involved is at least $200 but does not exceed $500. N.J.S.A. 2C:20-2(b)(3). If the amount involved is less than $200, the offense is disorderly persons offense. Ibid.[3]
The different approaches to gradation of offenses demonstrated in the official misconduct (N.J.S.A. 2C:30-2) and theft provisions (N.J.S.A. 2C:20-2(b)) of the New Jersey Code of Criminal Justice appears throughout the Code. Compare N.J.S.A. 2C:17-3(b) (criminal mischief); N.J.S.A. 2C:21-9(b) (misconduct by a corporate official); N.J.S.A. 2C:21-11(a) (rigging a publicly exhibited contest) and N.J.S.A. 2C:21-13(c) (fraud in insolvency), with N.J.S.A. 2C:27-2(d) (bribery in official and political matters); N.J.S.A. 2C:27-4 (compensation for past official behavior); N.J.S.A. 2C:27-7 (unlawful compensation of a public servant); N.J.S.A. 2C:29-4 (compounding) and N.J.S.A. 2C:30-3 (wagering on official action or information). The first four offenses listed are graded in harmony with the theft statute. A showing of pecuniary damage done or benefit involved is an element of the offense itself. In the second group of offenses *375 the Legislature has in each instance specified the interdicted conduct to be an offense of the second degree. It has then provided that if the benefit involved was $200 or less, the defendant committed a third degree offense.
It is apparent that this approach was quite intentional and it indicates to us how to construe N.J.S.A. 2C:30-2. When we consider the elements of official misconduct we start from the premise that the offense is of the second degree. A defendant in an official misconduct case must have a purpose to obtain a benefit for himself or another.[4]N.J.S.A. 2C:30-2. A benefit means a gain or advantage or anything so regarded by the beneficiary, including a pecuniary benefit. N.J.S.A. 2C:27-1. Thus, a benefit need not necessarily be pecuniary. Accordingly, a person may be convicted of the second degree offense of official misconduct even though no pecuniary benefit is involved. But the Legislature has provided that if the benefit "is of a value of $200.00 or less," the offense is a crime of the third degree. N.J.S.A. 2C:30-2(b). This exception is clearly pecuniary in nature. The use of the words "of a value" convinces us that the Legislature in this downgrading provision intended to treat more moderately offenses which, by an objective standard, could be measured to be relatively less consequential in nature than would otherwise be the case. It carved out a type of official misconduct for lenient treatment. But the Legislature did not in the downgrading provision deal with a benefit not subject to pecuniary measurement. Thus, the judge's charge was correct. He told the jury that second degree misconduct was misconduct not solely involving a pecuniary benefit or misconduct with a pecuniary benefit of a value over $200.
We realize that it may be argued that official misconduct to obtain a benefit of no pecuniary value should not result in a *376 more serious offense than misconduct to obtain a benefit of small value. But such an argument assumes that the significance of a gain or advantage (see N.J.S.A. 2C:27-1(a)) is necessarily measurable in pecuniary terms. This is not necessarily so. For example, an election official could intentionally permit an ineligible person to vote in an election. Such a serious offense might not be intended to confer and might not confer in fact a pecuniary benefit. Yet it could rationally be considered more serious than an offense giving a small benefit.[5]
State v. Inman, 140 N.J. Super. 510 (App.Div. 1976), cited by defendant, is not contrary to the result we reach. That case held that on the facts there present it was error in a prosecution for a larceny indictment under N.J.S.A. 2A:119-2(a) not to instruct the jury that it could return a verdict convicting defendant of disorderly conduct under N.J.S.A. 2A:170-30.1 if the value of the goods was $200 or less. Here the jury was told that if the benefit was solely monetary or pecuniary and was $200 or less it should so specify. Thus, it could have returned a verdict for the lesser offense.
We have carefully considered defendant's other contentions. They are clearly without merit. R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] Gotshall had been indicted along with DeMarco and Gerrizzo and certain other persons (but not defendant) in Indictment 166-79-S. That indictment charged Gotshall with certain gambling offenses. One count alleged that he placed to and received from Gerrizzo numerous telephone calls for the purpose of betting and discussing bookmaking. Defendant was originally indicted alone in Indictment 185-79-J. Thereafter Indictment 525-79-M was returned. It superseded both of the prior indictments. Gotshall was not named in the superseding indictment.
[2] In State v. Boiardo, supra, 111 N.J. Super. at 235-236, this court suggested that the jury may consider a coconspirator's statement against a defendant without finding the existence of the conspiracy independently of the statement. But in Boiardo the trial judge had instructed the jury in substance that the jury had to find that the conspiracy existed before it considered the coconspirator's statement. Ibid. In any event, as demonstrated in D'Arco, Farinella and Hacker, the Boiardo suggestion is not being followed.
[3] Of course, the degree of the offense might be enhanced if any of the other aggravating or specific circumstances enumerated in N.J.S.A. 2C:20-2(b) are proven.
[4] Of course, he may also intend to injure or deprive another of a benefit, but we are not concerned with that in this case. See N.J.S.A. 2C:30-2.
[5] We do not deal in this opinion with the issue of which party in a criminal case has the burden of producing evidence that the benefit was of a value of $200 or less, or who has the burden of proof on the issue. The trial judge charged the jury that the State had the burden of proof of each and every element of the offense beyond a reasonable doubt. The thrust of the charge, though not specific on the point, was that the State had the burden beyond a reasonable doubt to prove the benefit was of a value of over $200 or was of a nonpecuniary nature. Thus, viewing the matter most adversely to the State, there was no error. We further note that on the facts if the jury considered the value to be solely pecuniary, it could hardly have found the value to be $200 or less. The record shows that the gambling operation was quite large. The value of the benefit that defendant conferred on the operations by his inaction in permitting the operation to continue surely exceeded $200.