775 A.2d 198 (2001)
STATE of New Jersey, Plaintiffs-Appellants,
v.
Thomas CETNAR III, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 2000.
Decided June 22, 2001.
*199 Paul G. Shapiro, Trenton, argued the cause for appellant (John J. Farmer, Jr., Attorney General, attorney; Mr. Shapiro and William Porter, Deputy Attorneys General, of counsel and on the brief).
Matthew T. Martens argued the cause for respondent (Latham & Watkins, attorneys; Mr. Martens and Michael Chertoff, Newark, of counsel and on the brief).
Before Judges PETRELLA, BRAITHWAITE and WELLS.
The opinion of the court was delivered by BRAITHWAITE, J.A.D.
This is an appeal by the State from a judgment notwithstanding the verdict that reduced defendant's jury conviction for second-degree official misconduct, N.J.S.A. 2C:30-2, to third-degree official misconduct. Following the jury's verdict of guilty to a charge of second-degree official misconduct, defendant moved for a judgment notwithstanding the verdict, arguing that the value of the "benefit" he received from the receipt and conversion of $4,800 in government money was $200 or less and therefore his conviction should be graded as a third-degree offense rather than a second-degree offense. See N.J.S.A. 2C:30-2(b). The trial judge granted defendant's motion for a judgment notwithstanding the verdict and reduced defendant's official misconduct conviction to one of the third-degree.
On appeal, the State contends that the trial judge erred in granting defendant's motion. We agree and now reverse and reinstate the original jury verdict of guilty to second-degree official misconduct. We remand to the trial judge for resentencing.

I
Defendant Thomas E. Cetnar III, was a lieutenant and later a captain in the Essex County Prosecutor's Office ("ECPO"). In *200 both capacities, defendant was responsible for the Special Investigations Unit ("SIU"). One area of investigation of the SIU was illegal narcotics distribution.
On October 23, 1995, defendant requested authorization to receive $4,800 in confidential government funds in order to conduct an undercover narcotics investigation. Defendant represented falsely to his superiors that he was investigating certain narcotics transactions in an area of Newark. His request was approved by the proper authority in the ECPO and a check for $4,800 was given to defendant. Defendant cashed the check.
At the time defendant received the funds, he was living with his then-girlfriend, Diane Rockwell. Rockwell maintained a checking account in her name from which the joint household expenses for her and defendant were paid. Defendant would deposit funds into Rockwell's account to help pay their bills. On October 26, 1995, three days after defendant received the $4,800, $2,500 of the funds were deposited into Rockwell's account. Prior to the deposit, there was only $197.79 in the account. However, Rockwell had written and mailed a check in the amount of $1,100 to American Express. The check payable to American Express cleared Rockwell's account on October 26, 1995. Rockwell testified that she was very careful about balancing her checking account and would not mail checks to pay bills unless there was sufficient money to cover the checks or knew that an adequate deposit was about to be made to cover the written check or checks.
The ECPO had a policy that funds received for undercover operations that went unused were to be returned to the ECPO within forty-eight hours. The prosecutor who approved defendant's receipt of the $4,800 learned within a week of defendant's receipt of the funds that the alleged undercover investigation was not going forward.
In light of this fact, defendant's superiors insisted that he return the money to the appropriate place in accordance with ECPO's protocol. Defendant refused to do so and told one superior, in late 1995, that the money was in an ECPO office safe. The representation was false. Defendant was told to return the funds to the proper location, but still refused to do so.
In March 1996, some five months after defendant's receipt of the money, his superior learned that the funds had not been returned. Defendant was ordered to return the money.
Defendant could not retrieve the money from the ECPO safe because it was not there. On March 28, 1995, defendant drove his mother to her bank so she could borrow $4,900. She withdrew $5,000 in cash from the bank and gave it to defendant. Defendant then went to a rest area on the Garden State Parkway where he and his mother met two other law enforcement officials. Defendant gave to these officials $4,800 in one hundred dollar denominations. These bills were the same bills received by defendant's mother from the bank and looked like they were "new" bills. Accordingly, some five months after defendant received $4,800 for a bogus undercover narcotics investigation, he returned the funds to the ECPO.
By May 1996, the State Division of Criminal Justice was engaged in an investigation of the ECPO, which included defendant's activities regarding the $4,800. One of defendant's law enforcement colleagues was scheduled to meet with State law enforcement personnel in connection with the investigation. Prior to the meeting, the colleague met with defendant who requested that the colleague lie and tell *201 the State police that the $4,800 had been in a safe at the SIU.
Defendant was subsequently indicted by a state grand jury for his conduct concerning the $4,800, and charged with seven counts of official misconduct, N.J.S.A. 2C:30-2; five counts of theft by failure to make required disposition, N.J.S.A. 2C:20-9; falsification of records, N.J.S.A. 2C:21-4; and fabrication of evidence, N.J.S.A. 2C:28-6. For reasons unrelated to any issue on appeal, this indictment was dismissed.
Subsequently, on April 7, 1998, defendant was reindicted for his conduct with the $4,800. This new indictment charged defendant with nine counts of second-degree official misconduct; four counts of third-degree theft by failure to make required disposition; two counts of witness tampering; one count of falsification of records; and one count of fabrication of evidence.
Following a jury trial, defendant was convicted by the jury of one count of second-degree official misconduct, one count of third-degree theft by failure to make required disposition and one count of witness tampering.[1] Defendant then filed four post-trial motions for a judgment notwithstanding the verdict or, in the alternative, a new trial. All the motions were denied with the exception of defendant's motion for a judgment notwithstanding the verdict on the second-degree official misconduct conviction. The trial judge vacated the jury's determination that defendant's benefit had a value exceeding $200, thereby grading defendant's conviction for official misconduct as a crime of the third-degree.
At sentencing, on March 6, 2000, the judge merged the theft conviction with the official misconduct conviction and imposed concurrent three-year terms of probation, conditioned upon a ninety-day period of incarceration in the county jail, on the official misconduct and witness tampering convictions. The judge also imposed other appropriate fines and monetary obligations on defendant and directed that he forfeit his public office and be barred from future public employment. See N.J.S.A. 2C:51-2.
The State immediately sought a stay of defendant's sentence to allow it to appeal the entry of the judgment notwithstanding the verdict. The trial judge denied the stay. Immediately after sentencing, defense counsel suggested that in light of the "complex legal issues presented" that both sides waive their right to appeal. The State's attorney advised defense counsel that he would respond to the suggestion "shortly."
On March 7, 2000, the State filed an application with this court for leave to appeal on an emergent basis. Defendant's counsel was notified of the State's application on March 7, 2000. On March 8, 2000, the State filed a notice of appeal with this court and moved for a stay of sentence. On the same date, March 8, 2000, defendant appeared at probation and was advised of the conditions of his probationary sentence. We granted the State's emergent application for a stay of sentence on March 9, 2000, and directed the trial judge *202 to set bail for defendant pending appeal. Bail was set at $25,000.
On November 13, 2000, we remanded the matter to the trial judge for a plenary hearing on the issue of double jeopardy. The hearing was held and the judge concluded that defendant "had no expectation of finality in the sentence imposed" and therefore principles of double jeopardy were not implicated.

II
N.J.S.A. 2C:30-2, official misconduct, provides as follows:
A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; or
b. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.
Official misconduct is a crime of the second degree. If the benefit obtained or sought to be obtained, or of which another is deprived or sought to be deprived, is of a value of $200.00 or less, the offense of official misconduct is a crime of the third degree.
In defendant's motion for a judgment notwithstanding the verdict on his official misconduct conviction, defendant argued that the benefit he obtained from the $4,800 was $200 or less because the benefit should be valued at the interest amount on $4,800 for a five-month period because he returned the money prior to his indictment. Put another way, defendant's benefit should be measured by the interest that a lender would have charged for defendant's "borrowing" of $4,800 for a period of approximately five months. The trial judge accepted defendant's position and granted his motion.
The State argues that the judge erred in granting the motion because, under the Criminal Code, when a statute references "amount involved," "benefit" and "other term of value," ... "that shall be the fair market value at the time and place of the operative act." N.J.S.A. 2C:1-14(m). We agree with the State.
Here, defendant received $4,800 in cash and no more than three days after he received it, used at least $2,500 to pay his own personal expenses. We cannot conclude that pursuant to N.J.S.A. 2C:1-14(m), the benefit to defendant was anything less than $4,800.
At oral argument, defendant's counsel argued the that the interest on $4,800 for a five-month period was the benefit defendant received because he returned the money. During argument, when counsel was asked what would be defendant's exposure under the official misconduct statute if defendant had invested the $4,800 in the stock market and realized $100,000 in profits, counsel replied that defendant would be exposed to a second-degree conviction. Counsel, however, advised that if counsel had invested the $4,800 and lost it in the stock market, defendant would be exposed to a third-degree conviction.
We cannot agree that the Legislature intended that the grading of defendant's offense under the official misconduct statute would turn on the outcome of defendant's investment result. The value of the benefit that defendant had here was $4,800, which he put to his own personal use. The benefit to defendant is not determined by the yield from the use of the $4,800, but by the fair market value of the money, which in this case is $4,800. Under *203 the circumstances present here, the "amount involved" for theft purposes and the "benefit" for purposes of official misconduct are synonymous.
Official misconduct is generally a crime of the second-degree. State v. Phelps, 187 N.J.Super. 364, 375, 454 A.2d 908 (App.Div.1983), aff'd, 96 N.J. 500, 476 A.2d 1199 (1984). The exception to a second-degree offense is when the benefit is pecuniary and is valued at $200 or less, then the offense is one of the third-degree. Ibid.; N.J.S.A. 2C:30-2(b). The purpose of the "downgrading provision" is to "treat more moderately offenses, which, by an objective standard, could be measured to be relatively less consequential in nature than would otherwise be the case." Phelps, supra, 187 N.J.Super. at 375, 454 A.2d 908. We can hardly conclude that defendant's actions here, involving $4,800 of public money, is, by an objective standard, "relatively less consequential in nature" than the conduct that the Legislature intended to be treated as a second-degree crime. Ibid.
Furthermore, we are satisfied that State v. Modell, 260 N.J.Super. 227, 615 A.2d 1264 (App.Div.1992), certif. denied, 133 N.J. 432, 627 A.2d 1138 (1993) is further support for our view that defendant's benefit is the $4,800 he received. In Modell, we addressed N.J.S.A. 2C:21-15, which makes it a crime for a person to misapply entrusted property. That provision uses "benefit derived" language in grading the offense. Ibid. In Modell, we concluded that "the benefit derived was that of the face amount of the funds used and not merely the value of the use of the funds for the period of time they were inappropriately used." Id. at 251, 615 A.2d 1264. We are satisfied that the same principle should apply in the official misconduct context when the benefit obtained is money.
Although we conclude that the trial judge erred in granting defendant's motion for a judgment notwithstanding the verdict, the judge's charge to the jury on official misconduct did not inform it that the benefit obtained by defendant was the interest for the use of the $4,800 for approximately five months. We mention this not because such a charge to the jury was appropriate, since it was not. Rather, we mention it because if such a charge was appropriate and not given, the remedy would be to grant defendant a new trial, not grant his judgment notwithstanding the verdict as was done here. The fixing of the value of the benefit is a jury question after the jury has been properly instructed.

III
Defendant argues that the State appeal should be dismissed because principles of double jeopardy preclude resentencing him as a second-degree offender. We disagree.
We remanded this matter to the trial judge for a plenary hearing on defendant's double jeopardy claim. The judge, following the hearing, made findings of fact that are fully supported by the credible evidence in the record. State v. Locurto, 157 N.J. 463, 470-71, 724 A.2d 234 (1999); State v. Johnson, 42 N.J. 146, 161-62, 199 A.2d 809 (1964). The judge also applied correctly the principles of State v. Sanders, 107 N.J. 609, 618, 527 A.2d 442 (1987).
The judge concluded:
Here, defendant had no expectation of finality in the sentence imposed by this court. Defendant (and his counsel) had at least constructive notice of the right of the State to appeal the sentence, pursuant to [Rule ] 2:3-1(b)(3), because the trial court acquitted defendant of a second degree offense, despite a jury's finding of guilt. He had actual notice that the State had sought a stay before the *204 trial court. On March 7, [State's attorney] informed [defense counsel] by telephone that the State would seek a stay of the defendant's sentence by emergent application. That application was forwarded to defense counsel by fax later that day. So, on the day before defendant appeared at the Probation Office, his attorneys knew that the State had a right to appeal, that the State had sought to perfect that right before the trial court, and that the State had filed papers seeking a stay in the appellate court. Therefore, defendant cannot argue that he had a legitimate expectation of finality of his sentence when he reported to the Probation Office.
We agree and affirm on this point substantially for the reasons expressed by the trial judge in his letter opinion of February 13, 2001, following our remand.

IV
We reverse the judgment notwithstanding the verdict and reinstate the jury verdict of guilty to second-degree official misconduct. We remand for resentencing.
NOTES
[1] The jury acquitted defendant of six charges: witness tampering (count six); official misconduct (counts three, five and twelve); and theft by failure to make required disposition (counts thirteen and fifteen). The jury failed to reach a verdict with respect to six charges: official misconduct (counts eight, fourteen, sixteen and seventeen); theft by failure to make required disposition (count nine) and falsification of records (count ten). Count eleven, fabrication of evidence, was dismissed by the trial judge before the case was submitted to the jury.