974 A.2d 1115 (2009)
408 N.J. Super. 313
STATE of New Jersey, Plaintiff-Appellant/Cross-Respondent,
v.
John LAKE, Defendant-Respondent/Cross-Appellant.
DOCKET NO. A-3988-07T4
Superior Court of New Jersey, Appellate Division.
Submitted May 18, 2009.
Decided July 27, 2009.
*1116 Anne Milgram, Attorney General, attorney for appellant/cross-respondent (Jeanne Screen, Deputy Attorney General, of counsel and on the brief).
Law Offices of Edward J. Crisonino, Cherry Hill, and Zucker Steinberg Sonstein & Wixted, P.A., attorneys for respondent/cross-appellant (Edward J. Crisonino, on the brief; Jeffrey C. Zucker, Camden, on the letter relying on the brief).
Before Judges LISA, SAPP-PETERSON and ALVAREZ.
The opinion of the court was delivered by
LISA, P.J.A.D.
After a bench trial, defendant was convicted of one count of second-degree official misconduct, N.J.S.A. 2C:30-2a, and two counts of second-degree bribery, N.J.S.A. 2C:27-2a. After merging one bribery count with the other, the judge sentenced defendant, pursuant to N.J.S.A. 2C:44-1f(2), to terms appropriate to a crime one degree lower than those of which he was convicted. The judge imposed concurrent three-year terms of imprisonment for official misconduct and the merged bribery counts. He also entered an order directing that defendant forfeit his public office and be forever disqualified from holding any such office. See N.J.S.A. 2C:51-2.
Within ten days of the imposition sentence, the State filed an appeal pursuant to N.J.S.A. 2C:44-1f(2), contending that the court erred in imposing a sentence appropriate for a crime one degree lower. Defendant's sentence has been stayed pending appeal. See State v. Sanders, 107 N.J. 609, 617 n. 7, 527 A.2d 442 (1987).
Defendant filed a cross-appeal. His sole argument is that the evidence was insufficient to support his conviction of second-degree offenses, and he should have been convicted only of third-degree official misconduct and bribery.
*1117 We agree with the State and reverse on its appeal. We reject defendant's argument and affirm on his cross-appeal.

I
We set forth in some detail the factual background because it is necessary to our analysis of the issues raised on both the appeal and cross-appeal.
Defendant was the mayor of the Township of Carneys Point. That municipality operates under a form of government in which the voters elect five township committee members who exercise legislative authority and appoint a mayor from amongst themselves. The mayor's appointment authority is subject to approval of the Township Committee.
Defendant's term of office was scheduled to end in 2006. He was running as a Republican candidate for reelection in the November 2006 general election. Defendant was also a member of the Township's Sewerage Authority and served as the emergency management coordinator for Salem County. Defendant had a long history in local politics at both the municipal and county levels.
In 2006, the makeup of the Township Committee was three Republicans and two Democrats. Because defendant was up for reelection, if his seat was won by a Democrat, control of the local governing body would change parties. Anthony Rullo was the Democratic candidate opposing defendant. Rullo had previously served a term on the Township Committee as a Republican. After losing his seat in the prior election, he switched his party affiliation. Rullo was also a member of the Township Sewerage Authority.
Prior to July 4, 2006, defendant approached Rullo and proposed that if Rullo would withdraw as a candidate, he would be guaranteed reappointment to the Sewerage Authority when his term expired. On July 4, 2006, defendant went to Rullo's home and again discussed Rullo's Sewerage Authority reappointment. Defendant also proposed that he could arrange for Rullo to obtain part-time mechanical work for the Authority, which would enable him to earn some extra money. This was the type of work Rullo had done when employed by DuPont, before his retirement. Expanding upon the proposal, defendant told Rullo he wanted him to wait until less than sixty days before the election to drop out so the ballots would already be printed and his party could not offer a replacement candidate. Thus, defendant would be able to run unopposed and would likely be assured reelection.
Rullo and his wife were raising three grandchildren due to personal difficulties of their daughter (the children's mother). Rullo informed his campaign manager about defendant's overtures, and his campaign manager reported the information to the Salem County Prosecutor's Office.
On July 25, 2006, defendant again went to Rullo's home. Defendant told Rullo he could not have the part-time job at the Sewerage Authority because to be eligible he would have to cease being a member of the Authority for at least one year. Defendant offered an alternative proposal. He said he could arrange for Rullo to be hired as the Township's zoning and housing inspector. The person presently holding that position was out on extended medical leave. The Township was in the process of advertising to fill the position until the end of the year. Defendant again conditioned his offer on Rullo dropping out of the election race.
On August 1, 2006, Detective Sergeant Gary Sandes, then with the Official Corruption Unit of the New Jersey State Police, was assigned to investigate the allegations concerning defendant. He contacted Rullo, who described the conditional offers made by defendant. Rullo agreed to cooperate *1118 by tape recording his future conversations with defendant. Rullo made clear that he had no intention of dropping out of the election, and he agreed to report all contacts with defendant to the police.
As instructed by the police, Rullo filed an application for the zoning and housing inspector job. On August 9, 2006, Rullo recorded a conversation he had with defendant at Rullo's home. Defendant explained that Rullo would be coached on how to conduct himself in the interview for the zoning and building inspector job and would be provided in advance with five prepared questions that would be asked at the interview. Rullo feigned concern that he had not served as a housing inspector for thirty years and had lost his familiarity with the applicable codes. Defendant assured him that he would have no problem, and, although another application had been submitted by a better qualified candidate, he assured Rullo that the other Township Committee members would go along with appointing him. Defendant also assured Rullo that he would be appointed to a full term as the zoning and housing inspector the following year as long as he performed the job reasonably for the remainder of the year.
In exchange for these assurances, defendant again asked Rullo to withdraw from the election less than sixty days before election day. In these discussions, defendant commented that his party would then continue in power for the next three years. Defendant also told Rullo that if he dropped out more than sixty days prior to the election and the Democrats were able to place a replacement candidate on the ballot, the deal would be off.
On August 30, 2006, Rullo recorded another conversation with defendant at Rullo's home. Defendant again offered Rullo the zoning and housing inspector job for the remainder of 2006, and reappointment for the 2007 term, in exchange for his dropping out of the upcoming election sometime in mid-September. Defendant offered advice to Rullo about how he should present the withdrawal of his candidacy to other members of his party who supported him and expended party funds for his campaign. Defendant suggested, for example, that Rullo explain that he was in financial difficulty, being retired and unexpectedly raising his grandchildren, as a result of which he needed to accept employment with the Township to earn some money. Defendant also suggested that Rullo tell his party members he felt bad running against defendant. Defendant reiterated that Rullo would be coached through the interview process for the zoning and housing inspector job, and he again assured him he would be reappointed for the 2007 term as long as he did a decent job for the remainder of 2006.
Rullo told defendant that on his application, when asked what salary he expected, he simply "wrote down there whatever the, the base salary is now." Defendant responded, "[Y]ou ain't gonna get rich, but it's not bad for part-time work." He continued: "And let's say in January I would, ah, my preference is I would, I would look to [be]cause John [the current office holder out on medical leave] won't be there is to move you into his job title and work offa that salary."
After the August 30, 2006 meeting, defendant and Rullo saw each other only once, at a Sewerage Authority meeting. They did not discuss anything related to defendant's proposal. Rullo, who had never intended to drop out of the election, withdrew his application for the zoning and housing inspector job. He stayed in the election race and defeated defendant.
At trial, Rullo and Sandes were the only witnesses for the State. The recordings and corresponding transcripts of the August 9 and 30, 2006 meetings were admitted *1119 in evidence. The transcripts are part of the appellate record. Defendant did not testify and did not present any fact witnesses. He presented ten character witnesses, who attested to his upstanding character, excellent reputation in the community, and years of service in local politics.

II
We first address defendant's argument that, because the State produced no evidence that the value of the benefits sought to be conferred on Rullo exceeded $200, he should have been convicted of only third-degree offenses.
The official misconduct statute provides, in relevant part:
A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another ...:
a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; ...
....
Official misconduct is a crime of the second degree. If the benefit obtained or sought to be obtained ... is of a value of $200.00 or less, the offense of official misconduct is a crime of the third degree.
[N.J.S.A. 2C:30-2 (emphasis added).]
The bribery statute provides, in relevant part:
A person is guilty of bribery if he directly or indirectly offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another:
a. Any benefit as consideration for a decision, opinion, recommendation, vote or exercise of discretion of a public servant, party official or voter on any public issue or in any public election; or
....
c. Any benefit as consideration for a violation of an official duty of a public servant or party official; or
d. Any benefit as consideration for the performance of official duties.
For the purposes of this section "benefit as consideration" shall be deemed to mean any benefit not authorized by law.
....
Any offense proscribed by this section is a crime of the second degree. If the benefit offered, conferred, agreed to be conferred, solicited, accepted or agreed to be accepted is of the value of $200.00 or less, any offense proscribed by this section is a crime of the third degree.
[N.J.S.A. 2C:27-2 (emphasis added).]
Under the official misconduct statute, the benefit may be either that which defendant sought to obtain for himself or that which he sought to obtain for another. N.J.S.A. 2C:30-2a. Likewise, under the bribery statute, the benefit may be either that which defendant "solicits, accepts or agrees to accept" from another or that which he "offers, confers or agrees to confer" upon another. N.J.S.A. 2C:27-2a. In this case, the "benefits" for each of the crimes are both the value of the positions defendant offered to secure for Rullo and the benefit defendant sought to secure for himself in winning the election unopposed.
The definitional section applicable to both statutes defines "benefit" to mean "gain or advantage, or anything regarded by the beneficiary as gain or advantage, including a pecuniary benefit ...." N.J.S.A. 2C:27-1a. A "pecuniary benefit" means a "benefit in the form of money, property, commercial interests or anything else the primary significance of which is economic gain." N.J.S.A. 2C:27-1f. The benefit need not be pecuniary. State v. Phelps, 187 N.J.Super. 364, 375, 454 A.2d *1120 908 (App.Div.1983), aff'd, 96 N.J. 500, 476 A.2d 1199 (1984).
In Phelps, we held that official misconduct is a crime of the second degree and that, rather than forming a substantive element of the offense, the above-emphasized language from N.J.S.A. 2C:30-2 "carves out an exception" where the benefit obtained or sought to be obtained is of a value of $200 or less. Id. at 373-74, 454 A.2d 908. We concluded that the Legislature intended for courts construing the official misconduct statute to "start from the premise that the offense is of the second degree." Id. at 375, 454 A.2d 908. We held that the carved out exception "is clearly pecuniary in nature" and did not apply to "a benefit not subject to pecuniary measurement." Ibid. The reasoning in Phelps, which dealt with the official misconduct statute, leads to the same conclusion with respect to the bribery statute. Applying this reasoning, we recently affirmed a conviction for second-degree official misconduct of a volunteer firefighter who repeatedly called in false fire alarms in order to experience the joy of responding to them and possibly to give the volunteer fire department enough work to justify its existence, holding that "[b]ecause there was no pecuniary benefit, the misconduct was second degree." State v. Quezada, 402 N.J.Super. 277, 286, 953 A.2d 1206 (App.Div.2008).
Relying on Phelps, the trial judge found that the State's failure to produce "direct proofs[] as to the value of any benefit that was involved in this case" did not defeat the second degree gradation of the offenses because of the distinction between benefits that are pecuniary in nature and those that are not. With respect to the latter, the presumed second-degree grade applies. Alternatively, the judge found that, if it was necessary to place a pecuniary value on the benefits intended to be conferred on Rullo, he would find as a matter of fact that the value exceeded $200 and that "no reasonable mind to the contrary could maintain a credible ... argument."
We agree with the judge's analysis. Both pecuniary and non-pecuniary benefits are involved in this case. Defendant sought to obtain for himself the benefit of winning an unopposed election. Because that benefit is not subject to pecuniary measurement, the State was not required to provide evidence as to any pecuniary value with respect to it. Defendant also offered Rullo municipal jobs, both of which had the "primary significance of ... economic gain" for Rullo. See N.J.S.A. 2C:27-1f. The benefits resulting from those jobs constituted pecuniary benefit to Rullo. The trial judge recognized that, although the State offered no direct evidence to prove their monetary worth, the jobs would obviously bring Rullo a benefit of more than $200 in wages. The record contains sufficient credible evidence to support this inferential finding. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). The finding is similar to the observation we made in Phelps that, because of the scope of the gambling operation involved, even if the State had the burden of proving that the benefit was of a value of over $200, the jury "could hardly have found the value to be $200 or less ... [because] the gambling operation was quite large ... [and][t]he value of the benefit that defendant conferred on the operations by his inaction in permitting the operation to continue surely exceeded $200." Phelps, supra, 187 N.J.Super. at 376 n. 5, 454 A.2d 908.
Therefore, under either alternative, the judge correctly found defendant guilty of second-degree official misconduct and bribery.

*1121 III
We now address the sentencing issue raised by the State. The State argues that the trial court erred in imposing a sentence appropriate for a crime one degree lower than that of the second-degree crimes of which defendant was convicted. We agree with the State.
We first note the aspects of the sentence that are not in dispute. Second-degree crimes carry a presumption of imprisonment. N.J.S.A. 2C:44-1d. The judge found that the presumption was not overcome, as a result of which the sentence must be one of imprisonment. Defendant does not dispute this. Although the State argued in the trial court against merger of the two bribery convictions, it does not raise that issue before us, and thus acquiesces in the merger. The State acknowledged in the trial court that concurrent sentencing on all of defendant's convictions would be appropriate, and it does not now argue otherwise. Therefore, the only issue before us is whether the judge erred by imposing a three-year sentence, within the third-degree range of three to five years, see N.J.S.A. 2C:43-6a(3), rather than within the five to ten year range provided for second-degree crimes, see N.J.S.A. 2C:43-6a(2). To justify the three-year sentence, the judge invoked the authority of N.J.S.A. 2C:44-1f(2), which provides:
In cases of convictions for crimes of the first or second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted.
The judge recognized the two-step process required by the statute. The first required an analysis of aggravating and mitigating factors. He found two aggravating factors: (4) a lesser sentence will deprecate the seriousness of the offense because it involved a breach of the public trust under chapters 27 and 30; and (9) the need for deterrence. See N.J.S.A. 2C:44-1a(4) and (9). The judge found the presence of the following mitigating factors: (1) defendant's conduct neither caused nor threatened serious harm; (5) the victim (Rullo) of defendant's conduct induced or facilitated its commission; (7) defendant has no prior criminal history; (8) defendant's conduct was the result of circumstances unlikely to recur; and (9) the character and attitude of defendant indicate he is unlikely to commit another offense. See N.J.S.A. 2C:44-1b(1), (5), (7), (8) and (9). The judge acknowledged that mitigating factor (5) was of dubious application because the true victim here is the public. The judge found that, even without mitigating factor (5), he was clearly convinced that, upon qualitative analysis, the mitigating factors substantially preponderated over the aggravating factors. Therefore, the first component of the two-step test prescribed by N.J.S.A. 2C:44-1f(2) was satisfied.
Based upon our review of the record, we are satisfied that the judge's findings as to the presence of aggravating and mitigating factors and the weight to be attributed to each of them (except as to mitigating factor (5)), are supported by substantial credible evidence in the record. Likewise, the judge's finding of a substantial preponderance of the mitigating over the aggravating factors is amply supported by the record.
As to the second component of the two-part test, that "the interest of justice demands" sentencing one degree lower, the judge found:
He's obviously led an exemplary public life, excluding, of course, these salient events. He's given the publicit's so *1122 obvious, he's given the public far more than he took.... [H]is private life has been equally one of charity and warmth towards his family. But not only his family ... but also to others who perhaps, as I've read, are persons who he didn't even know or didn't know well. He served in public office withagain, excluding these eventswith distinction.
The whole person concept, which is one that we're invited to look at, does cry out for a third degree range.
The evils that were afoot in this matter did not occur. And that's something thatI know I stated that before, but citing it as a reason now to sentence in a one degree lower needs repeating. Mr. Rullo did not get a job. He did not withdraw. The forfeiture of office is a significant penalty in and of itself, which has deterrent effect as well. Seven years, as the State suggests, is simply over the top. I don't know how else to say it. It's just over the top for a first offender with these facts.
... It's more than necessary. It's more than the public demands. It's permitted for the Court to make that adjustment. There isthere is a case, [State v. Evers, 175 N.J. 355, 815 A.2d 432 (2003)], which suggestsperhaps holds, but certainly suggests that the whole person concept, the things that I've mentioned and the exemplary life that he has led throughout his public and private are factors which the Court can consider, not in overcoming the presumption of incarceration but in sentencing one degree lower.
No citizen of Salem County is going to be shocked or have a shocked conscience. I'm not going to read this tomorrow morning in one of our newspapers and say, look at this, what happened, three years, is that all?....
There will be an abundance of deterrence that goes forward. Discretion in sentencing, when allowed by our law, ought to be exercised where appropriate, and this is one of those cases where I feel it is appropriate.
Accordingly, I would sentence Mr. Lake to three years New Jersey State Prison on the official misconduct; three years concurrent on the merged bribery charges.
In the seminal case interpreting the term "interest of justice" in N.J.S.A. 2C:44-1f(2), our Supreme Court cautioned that a downgrade decision under this provision should be limited to cases in which a defendant can provide "compelling reasons" for the downgrade. State v. Megargel, 143 N.J. 484, 501-02, 673 A.2d 259 (1996). The reasons supporting the interest of justice prong must be "in addition to, and separate from" the mitigating factors which substantially outweigh the aggravating factors and thus satisfy the first prong. Id. at 502, 673 A.2d 259.
Although the surrounding circumstances and the need for deterrence may be taken into account, the severity of the crime remains the single most important factor in considering whether the interest of justice demands a downgrade. Id. at 500, 673 A.2d 259 (citing State v. Hodge, 95 N.J. 369, 379, 471 A.2d 389 (1984)). Recognizing that the principles underlying the Criminal Code favor deterrence and protection of the public over rehabilitation and are designed to foster uniformity in sentencing, the Court emphasized that "[t]he focus on the offense rather than the offender is inexorable in formulating a sentence." Ibid.
The Court held that, in evaluating the severity of the crime, trial courts must consider the nature of the circumstances pertaining to the offense. Ibid. If the surrounding circumstances of an offense make it very similar to a lower degree offense, a downgraded sentence may be *1123 appropriate. Ibid. The Court cited the following illustrative examples:
For example, a defendant who simulates having a gun by placing his hand in his pocket can be convicted of first-degree robbery. Such a crime, however, is very similar to second-degree robbery.
Although the degree of the crime is the focus of the sentence, facts personal to the defendant may be considered in the sentencing process. Courts should consider a defendant's role in the incident to determine the need to deter him from further crimes and the corresponding need to protect the public from him. Was the defendant the mastermind, a loyal follower, an accomplice whose shared intent is problematic, or an individual who is mentally incapable of forming the necessary criminal intent? [Id. at 500-01, 673 A.2d 259 (citations omitted).]
Thus, the Court made it clear that, because the focus remains on the offense and not the offender, the surrounding circumstances used as compelling reasons for a downgrade should arise from within the context of the offense itself. Ibid. The Court instructed trial courts to "state why sentencing the defendant to the lowest range of sentencing for the particular offense for which he was convicted, is not a more appropriate sentence than a downgraded sentence under section 44-1f(2)." Id. at 502, 673 A.2d 259.
The Court also held that the "interest of justice" standard of N.J.S.A. 2C:44-1f(2) is not the same as the "serious injustice" standard for overcoming the presumption of imprisonment applicable to first and second-degree convictions under N.J.S.A. 2C:44-1d. Id. at 499, 673 A.2d 259. The statutory presumption of imprisonment provides:
The court shall deal with a person who has been convicted of a crime of the first or second degree ... by imposing a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that his imprisonment would be a serious injustice which overrides the need to deter such conduct by others.
[N.J.S.A. 2C:44-1d (emphasis added).]
In Megargel, the Court recognized that the two statutes address "qualitatively different situations," with N.J.S.A. 2C:44-1d being geared toward the initial determination of whether a defendant will be "in or out" of prison rather than the length of term scenario confronted by the downgrade provision of N.J.S.A. 2C:44-1f(2). Supra, 143 N.J. at 499, 673 A.2d 259. Thus, the Court held that the compelling reasons required to satisfy the interest of justice for a downgrade under N.J.S.A. 2C:44-1f(2) present a "somewhat lower standard" than the "truly extraordinary and unanticipated circumstances" required before a "serious injustice" may be found under N.J.S.A. 2C:44-1d. Id. at 501-02, 673 A.2d 259.
In Evers, the Court stated that "[i]n permitting consideration of `the character and condition of the defendant' in determining whether imprisonment would be a `serious injustice,' [N.J.S.A. 2C:44-1d] left `a residuum of power in the sentencing court not to imprison in those few cases where it would be entirely inappropriate to do so.'" Evers, supra, 175 N.J. at 389, 815 A.2d 432 (quoting State v. Roth, 95 N.J. 334, 358, 471 A.2d 370 (1984)). Yet, in Evers, the Court considered only the serious injustice standard of N.J.S.A. 2C:44-1d and was not confronted with a downgrade issue under N.J.S.A. 2C:44-1f(2). Id. at 397, 815 A.2d 432. In Megargel, before offering guidance on what types of circumstances justify a downgrade in the interest of justice, the Court specifically noted that N.J.S.A. 2C:44-1f(2) contains "no reference to the *1124 defendant's character or condition." Supra, 143 N.J. at 499, 673 A.2d 259.
Our reading of these cases leads us to conclude that circumstances such as a defendant's overall character or contributions to the community should not be considered under the interest of justice prong in the determination of whether or not to downgrade a sentence pursuant to N.J.S.A. 2C:44-1f(2). This is an offense-oriented provision. Characteristics or behavior of the offender are applicable only as they relate to the offense itself and give fuller context to the offense circumstances. See, e.g., State v. Read, 397 N.J.Super. 598, 613-14, 938 A.2d 953 (App.Div.) (holding that a downgrade for a juvenile who pled guilty to first-degree robbery was not warranted because, although the defendant acted as the look-out while his confederate committed the robbery, "we see no basis for characterizing defendant's role as only secondary .... [and no] evidence of the kind of psychological impairment that would be relevant to this determination"), certif. denied, 196 N.J. 85, 951 A.2d 1038 (2008).
Applying these principles, we agree with the State that the trial judge did not correctly apply the interest of justice prong of the downgrade provision as interpreted by Megargel. One aspect of the judge's error was in relying on Evers to evaluate "the whole person." In Evers, "the propriety of downgrading the child pornography distribution charge from a second-degree to a third-degree offense for the purpose of sentencing [was] not raised in [the] appeal." Supra, 175 N.J. at 397, 815 A.2d 432. Evers dealt with the "serious injustice" standard for overcoming the presumption of imprisonment, which includes the statutory criteria of giving "regard to the character and condition of the defendant." See N.J.S.A. 2C:44-1d. Both in Evers and Megargel, the Court made clear that these are two different tests for two different purposes and, because of the differing statutory language and differing purposes, the tests are not the same. Consideration of the whole person is appropriate as part of the evaluation of the "character and condition of the defendant" for purposes of determining whether the presumption of imprisonment has been overcome. However, it is not appropriate in the "interest of justice" analysis of the downgrade provision. Thus, the judge erred in considering defendant's many years of public service, his first offender status, his acts of kindness over the years to his family and members of the public, and the like. While appropriate for consideration as mitigating factors, and therefore applicable to the first prong, they have no application to the second prong. In essence, much of the judge's rationale supporting the second prong was a restatement of the reasons underlying the various mitigating factors. This is contrary to Megargel's directive that the basis for the second prong must be separate and distinct from the mitigating factors.
The judge's only finding under the interest of justice prong dealing with the offense itself was that "[t]he evils that were afoot in this matter did not occur." This fact supported the judge's finding of mitigating factor (1), that defendant's conduct did not cause or threaten serious harm. Aside from not being separate and distinct from the facts underlying the mitigating factors, we fail to see how it is relevant that defendant failed in his attempt to subvert the election process through official misconduct and bribery. He did not "see the light" and call off the arrangement. His plan was thwarted only because the person with whom he thought he had a deal was never complicit in the arrangement and refused to go through with it. This "fact" was not properly considered *1125 in minimizing the seriousness of defendant's crimes.
We also find no significance in the fact that defendant was required to forfeit his public office and be forever barred from holding public office. This is a statutory consequence of his criminal conduct that was imposed upon him. Besides not being related to the offense, it was not something of his doing that should reduce the penal consequences of his criminal conduct.
An analysis of the offense circumstances at once makes clear that this is not one of those rare cases that satisfies the interest of justice standard for a downgrade. Defendant's conduct spanned several months. He was the sole and direct architect of the scheme. It could not be said that this was an isolated act of aberrant behavior in which an otherwise law-abiding person exercised poor judgment on one occasion. Defendant persisted in his conduct, geared to stealing the election and subverting the electoral process that is at the foundation of our democracy. He met repeatedly with Rullo, attempting to persuade him to participate in the scheme, and offering him public employment, for which he may not have even been qualified, at public expense, as the quid pro quo for allowing defendant to run unopposed for public office. Defendant's conduct was deliberate, persistent over several months, and flagrant. His conduct presented no compelling circumstances to remove it from the heartland of offenses of this type, to place it in a less egregious light, and to warrant a downgraded sentence.[1]
We therefore reverse the sentence of three years imprisonment for second-degree official misconduct and the merged second-degree bribery offenses. Ordinarily, we would remand for resentencing in the second-degree range. However, as in Megargel, the sentencing judge is no longer on the bench. See Megargel, supra, 143 N.J. at 506, 673 A.2d 259. As we have stated, we are satisfied from our review of the record that the judge's finding that the mitigating factors substantially predominate over the aggravating factors is well-founded. Accordingly, as did the Court in Megargel, see ibid., we deem this an appropriate circumstance in which to exercise original jurisdiction. See R. 2:10-5. Based upon the substantial preponderance of mitigating factors, we sentence defendant at the bottom of the second-degree range to five years imprisonment for official misconduct and to a concurrent term of five years imprisonment for the merged bribery convictions. The trial court shall enter an amended judgment of conviction to that effect.
Reversed on the State's appeal; affirmed on defendant's cross-appeal. The stay of sentence is vacated.
NOTES
[1] The State makes a further argument that we should consider the Court's admonition in Megargel that courts exercise special caution before downgrading a sentence for an offense for which the Legislature has provided for enhanced punishment. See supra, 143 N.J. at 503-04, 673 A.2d 259. That was the case in Megargel, where the offense was first-degree kidnapping, which carried a sentence greater than first-degree crimes generally carry. Ibid. In this case, at the time defendant committed the offenses, no enhanced punishment was provided. However, effective April 14, 2007, legislation was enacted providing for a minimum mandatory term of five years imprisonment without parole for certain second-degree offenses, including bribery and official misconduct. See N.J.S.A. 2C:43-6.5, L. 2007, c. 49, § 6. We decline to consider this argument, as it may have ex post facto implications.