**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1672-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SAHIL KULGOD,

    Defendant-Appellant.

_____

Submitted March 17, 2021 – Decided September 10, 2021

Before Judges Alvarez, Geiger, and Mitterhoff (Judge Geiger concurring).

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 15-04-0231.

Amira R. Scurato, attorney for appellant.

Michael R. Robertson, Somerset County Prosecutor, attorney for respondent (Paul H. Heinzel, Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

A jury convicted defendant Sahil Kulgod of second-degree vehicular homicide, N.J.S.A. 2C:11-5.  On November 8, 2019, the trial judge sentenced him to a five-year prison term subject to the No Early Release Act's eighty-five-percent parole ineligibility.  See N.J.S.A. 2C:43-7.2.  We affirm the conviction, but remand for the court to sentence defendant anew.

At approximately 10:00 a.m. on January 4, 2015, defendant, a college student home on his winter break, went for a drive in his black 2012 Ford Focus.  He traveled southbound on a roadway in Hillsborough Township.  The posted speed limit was 45 miles per hour, and as he approached a curve, a warning sign recommended a speed of 35 miles per hour.  The road surface was wet from an earlier rainfall.

Beginning 1023 feet from the area of impact, a series of nine chevrons indicate the curve travels first from the left to the right, then from the right to the left.  The configuration of the curve limits the sight line, as does some vegetative growth before the second half of the curve.  Homes and driveways line the approach on the right side of the southbound lane, a sign announces "School Bus Stop Ahead" after the first chevron, another reads "Hidden Driveway"; and between the chevrons in the first curve and the second, a very large yellow arrow is posted.  A yellow diamond-shape sign placed beyond that

2

indicates a T-intersection after the curve.  Also along that second curve is a sign depicting a man on horseback.

The State's accident reconstruction and Event Data Recorder (EDR) expert, Richard R. Ruth, testified regarding his examination of the EDR removed from defendant's car after the accident.  He opined that five seconds before impact, defendant's vehicle was traveling at a speed of 86.5 miles per hour, plus or minus 4% (between 83 miles per hour and 90 miles per hour).  In the next half-second, the Focus slowed slightly to 86.1 miles per hour, and the acceleration pedal position was at zero, meaning the driver's foot was off the pedal but the brake had not yet been activated.  At four seconds before impact, the speed was reduced to 85 miles per hour, plus or minus 4%, and the brakes were touched lightly, although not slowing the vehicle down "very much."  From three-and-a-half to two-and-a-half seconds before the crash, the driver depressed the brake pedal enough to reduce the speed to 74 miles per hour at three seconds. Given the road surface and physical forces involved, even extreme braking at that point could only result in a speed reduction of 12 to 3 miles per hour per second.

From two-and-a-half to one-and-a-half seconds, the speed dropped 5 miles per hour in one half-second and 4 miles per hour in the next half-second, so

3

braking was occurring, but not at maximum. At two seconds before the impact, the anti-lock braking system was activated, but the car's speed was still 62.2 miles per hour. From two seconds to one-and-a-half seconds, the car slowed only another 4 miles per hour.

Somerset County Prosecutor's Office Lieutenant William Pauli also testified as an expert in accident reconstruction. After examining the road surface shortly after the accident, he concluded that as the victim's vehicle was traveling north in the northbound lane, defendant's Ford crossed the double yellow line, encroaching into the northbound lane of the second curve. The left front of the Ford struck the right front of the victim's tan 1991 BMW with such force that the BMW was pushed off the road. The right rear of the vehicle struck a tree after the car rotated 270 degrees.

Pauli opined the maximum speed a car traveling southbound could reach when entering the second curve to the left, without leaving its lane, was 49.26 miles per hour. Defendant was traveling at 86.5 miles per hour, plus or minus 4%, at five seconds out. At two seconds from impact, defendant's car was traveling at 62.2 miles per hour, at one-and-a-half seconds 58.6 miles per hour, and at one second 58.6 miles per hour. At half-a-second, the speed of travel was 52.4 miles per hour—all exceeding speeds at which the car could maintain the

roadway. Although the maximum speeds were not calculated for a Ford Focus specifically, they were calculated for "[a] vehicle that's in normal turning condition."

On cross-examination, Pauli agreed that although a car following closely on defendant's bumper could have "[p]ossibly" affected defendant's ability to slow down preceding the accident, he did not factor a second vehicle into his analysis. On redirect, he explained that "[h]ad there in fact been a second car trailing as closely behind, and at a similar or [the] same speed, [he] would strongly feel that that third car would also have been involved in this crash." Pauli noted that defendant did not mention a second vehicle when interviewed at the scene. He added that because of defendant's speed of travel, calculated by another State expert, defendant would not have had adequate time to react given he would not have been able to see the approaching vehicle. Within that two-second window, "the defendant's vehicle had already lost lateral control and was coming over regardless of whether there was a vehicle there or not."

Other witnesses also testified at trial. A driver who proceeded through the S-curve travelling northbound immediately before the accident saw a metallic colored BMW driving southbound closely behind a black car. She had to pull over onto the shoulder to avoid the BMW, which appeared to be

A-1672-19

attempting to pass.  The BMW returned to its proper lane before the two cars moved on.  She was so shaken by the incident that she pulled over again, after leaving the S-curve, to call her husband.

A second passerby saw the aftermath of the collision, while entering the S-curve in the southbound direction, and stopped to render assistance.  He noticed a blue BMW parked between him and the collision site.  Presumably that vehicle was the one the other driver identified as metallic.

From his kitchen window, John Van Cleef, who lived on the roadway, saw a black car "flying by" approximately twenty feet away, immediately before the accident.  He estimated the speed of the car at over 100 miles per hour.  He explained the basis for this calculation—he could hear and see the vehicle, knows the speed limit on that stretch of roadway, and knows how fast cars usually travel.  He did not see a second vehicle.

Satin Van Cleef heard a sound like "a rocket."  When she looked out the window, the car was already out of sight.  She estimated the car's speed to be at least 120 miles an hour, and anticipated it would not successfully negotiate the bend.  On cross-examination, she agreed her husband had told her the car was traveling at least 120 miles per hour.

A-1672-19

Defendant, while maneuvering into the second portion of the S-curve, struck and killed Nancy Louie, who was driving her college-age daughter Melissa Louie's[1] 1991 BMW. The two were traveling to New York City to spend the day with family. Melissa, seated in the passenger's seat, was only slightly injured. As she left the vehicle, she immediately realized that her mother had died. The medical examiner testified that Nancy's lethal injuries centered on the left side of the head, the chest, and the pelvis, including skull fractures.

The model jury charge for vehicular homicide, reproduced later in this opinion, incorporates references to any motor vehicle offenses with which a defendant is charged. In this case, they were reckless driving, N.J.S.A. 39:4-96, and failure to keep right, N.J.S.A. 39:4-82. At the close of the testimony, defendant requested an instruction differentiating between recklessness as defined in the vehicular homicide statute and recklessness as defined in the Motor Vehicle Code. The court, accordingly, gave an instruction on the difference. When asked at the end of the jury charge if he had any objection to the instructions, defense counsel indicated he did not.

---

[1] We refer to the Louies by their first name to avoid confusion.

A-1672-19

After the jury found defendant guilty of vehicular homicide, the judge found defendant guilty of the reckless motor vehicle offense because of his speed. As to the failure to keep right, the judge said:

> On that charge, I believe that that charge is subsumed in the reckless driving charge of [N.J.S.A. 39:]4-96 . . . . In fact, that driving of the center line was part of, not all, but part of the reckless driving behavior. So I am going to find that that -- I'm going to find him not guilty on that as merged into the [N.J.S.A. 39:]4-96 which is the more serious charge.
>
> All right. Those will --- the sentencing on those will be addressed at the sentencing in this matter.

At sentencing, the judge imposed fines and penalties on both summonses. When counsel reminded him about merger, the judge stated that he had already made his determination and that the time to have raised it would have been earlier, when he convicted defendant of the offenses. The judge agreed that he previously said no penalties would be imposed, and he therefore "waived" them but said that "[t]he convictions stand." We discuss this issue and the judge's findings of aggravating and mitigating factors in the relevant section of this opinion.

On appeal, defendant raises the following four points:

POINT I

CHARGING THE JURY WITH THE ELEMENTS OF "RECKLESS DRIVING" IN A VEHICULAR HOMICIDE CASE DEPENDENT ON THE DISTINCTION BETWEEN "RECKLESS" AND "NEGLIGENT" CONDUCT, PARTICULARLY WHERE THERE WAS NO TRIAL TESTIMONY REGARDING THE ISSUANCE OF THAT PARTICULAR TICKET, WAS UNDULY PREJUDICIAL AND NECESSITATES REVERSAL.

POINT II

THE ADMISSION OF THE SPEED ESTIMATE OF TWO DIFFERENT WITNESSES WAS IMPROPER AND HIGHLY PREJUDICIAL REQUIRING REVERSAL.

POINT III

THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY FAILING TO TAILOR THE FACTS IN THE CAUSATION CHARGE.

POINT IV

MR. KULGOD SHOULD BE RESENTENCED AS A RESULT OF THE JUDGE'S INSUFFICIENT SUPPORT FOR THE AGGRAVATING FACTOR AND THE JUDGE'S FAILURE TO FIND MITIGATING FACTORS AMPLY BASED IN THE RECORD.

I.

Defendant contends the judge erred in his discussion of the elements of reckless driving, confusing the jury as to the difference between recklessness as found in the vehicular homicide statute and recklessness in the Motor Vehicle Code. The claim lacks merit.

The model jury charge for vehicular homicide provides that criminal homicide constitutes vehicular homicide when caused by the reckless driving of a motor vehicle. Model Jury Charges (Criminal), "Vehicular Homicide (Death by Auto or Vessel Without Drunk Driving or Refusal) (N.J.S.A. 2C:11-5)" (rev. June 14, 2004). It states:

> A person acts recklessly when (he/she) consciously disregards a substantial and unjustifiable risk that death will result from (his/her) conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the defendant's conduct and the circumstances known to (him/her), disregard of the risk involves a gross deviation from the standard of conduct that a reasonable person would observe in the defendant's situation.
>
> In other words, in order for you to find that the defendant drove a vehicle [or vessel] recklessly, the State must prove beyond a reasonable doubt that the defendant was aware that (he/she) was operating a vehicle [or vessel] in such a manner or under such circumstances as to create a substantial and unjustifiable risk of death to another. The State must also prove beyond a reasonable doubt that the defendant

10

consciously disregarded this risk and that the disregard of the risk was a gross deviation from the way a reasonable person would have conducted (himself/herself) in the situation.

Recklessness is a condition of the mind that cannot be seen and that can often be determined only from inferences from conduct, words, or acts. It is not necessary for the State to produce a witness to testify that the defendant stated that (he/she) acted with a particular state of mind. It is within your power to find that proof of recklessness has been furnished beyond a reasonable doubt by inferences that may arise from the nature of the acts and circumstances surrounding the conduct in question.

The model vehicular homicide jury charge was given by the judge in his opening instructions.

In his closing charge, the judge added language regarding causation. At the request of defense counsel, the judge modified the instruction to explain the difference between "recklessness" in the vehicular manslaughter statute and that in the motor vehicle offense:

The defendant, Sahil Kulgod, is charged in [c]ount one with the crime of vehicular homicide. The statute on which this charge is based provides criminal homicide constitutes vehicular homicide when it is caused by driving a vehicle recklessly. In order for you to find the defendant guilty of this crime, the State must prove the following elements beyond a reasonable doubt: Number (1) that the defendant was driving a vehicle. Number (2) that the defendant caused the

11

death of Nancy Louie and number (3) that the defendant caused such death by driving the vehicle recklessly.

Now, causation has a special meaning under the law. To establish causation, the State must prove two elements each beyond a reasonable doubt. First, but for the defendant's conduct, the result in question would not have happened. In other words, without defendant's actions, the result would not have occurred. And second, the State must prove the actual result, meaning the death of Nancy Louie must have been within the risk of which the defendant was aware. If not, it must involve the same kind of injury or harm as the probable result and must also not be too remote, too accidental in its occurrences or too depend[e]nt on another's volition or act to have a just bearing on the defendant's liability or on the gravity of his offense.

Going to instruct you as to recklessness. The law on recklessness: A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that death will result from his conduct. The risk must be of such a nature and degree that considering the nature and purpose of the defendant's conduct and the circumstances known to him, disregard of the risk involves a gross deviation from the standard of conduct that a reasonable person would observe in the defendant's situation.

In other words, in order for you to find that the defendant drove a vehicle recklessly, the State must prove beyond a reasonable doubt that the defendant was aware that he was operating a vehicle in such a manner or under such circumstances. Let me say that again -- he was operating a vehicle in such a manner or under such circumstances as to create a substantial and unjustifiable risk of death to another. The State must also prove beyond a reasonable doubt that the defendant

A-1672-19

consciously disregarded this risk and that the disregard of the risk was a gross deviation from the way a reasonable person would have conducted him or herself in that situation.

I want to instruct you, as well, [on] the law [for] negligence. In this case, the defense argues that Sahil Kulgod acted negligently rather than recklessly on January 4th of 2015. A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the defendant's failure to perceive it, considering the nature of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the defendant's situation. It's the state of mind -- recklessness and negligence are conditions of the mind which cannot be seen -- can only be determined by inferences from conduct, words or acts.

The state of mind is rarely susceptible of direct proof, but must ordinarily be inferred from the facts. Therefore, it is not necessary, members of the [j]ury, that the State produce witnesses to testify that Mr. Kulgod said he had a certain state of mind when he engaged in a particular act. It is within your power to find that such proof has been furnished beyond a reasonable doubt by inference which may arise from the nature of his acts and his conduct and from all he said and did at the particular time and place and from all the surrounding circumstances.

The State alleges that the defendant's conduct involved a violation of the motor vehicle laws of the state. Specifically, it is alleged that the defendant engaged in reckless driving in violation of N.J.S.A.

13

39:4-96 and failing to keep right in violation of N.J.S.A. 39:4-82. The reckless driving statute, a motor vehicle statute, provides a person who drives a vehicle heedlessly in willful or wanton disregard of the rights of safety of another in a manner so as to endanger or be likely to endanger a person or property shall be guilty of reckless driving.

I'm telling you that that's what the motor vehicle statute is, but I want to advise you that the motor vehicle offense for reckless driving is separate and distinct from the recklessness element of the criminal charge that you must decide. That motor vehicle offense will be decided not by you but by another [c]ourt. So I'm only advising you as to what the reckless driving statute is, but that is not the standard that you're to apply [in] this criminal case, okay?

The statute requiring motorists to keep right provides, upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive it on the right half of the roadway. He shall drive a vehicle as closely as possible to the right hand edge or curve of a roadway unless it is impracticable to travel on that side of the roadway.

Whether the defendant is guilty or not of those offenses will be determined by [the] appropriate [c]ourt, not by you. In other words, it's not your job to decide whether defendant is guilty or not guilty of any motor vehicle offenses. However, you may consider the evidence that he committed motor vehicle offenses in deciding whether he was reckless. That's the reason I give you that information.

"When a party does not object to a jury instruction, this [c]ourt reviews the instruction for plain error." State v. Montalvo, 229 N.J. 300, 320 (2017).

14

"In the context of jury instructions, plain error is '[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).

The judge's closing charge was not plain error—to the contrary, it effectively addressed defendant's point that the definition of recklessness may confuse the jury. As called for by the model jury charge, the judge specified that the jury could consider evidence as to whether defendant committed the motor vehicle offenses in assessing whether he was reckless. However, the judge never strayed from the definition of recklessness within the vehicular homicide statute. He told the jury that to decide whether defendant was guilty of the crime, they had to apply the recklessness standard found in the vehicular homicide statute, and he defined the standard. He later correctly defined the recklessness necessary for the motor vehicle offenses and told the jury they were not responsible to decide those charges.

One calls for the "conscious[] disregard[] [of] a substantial and unjustifiable risk that death will result from [the actor's] conduct." Model Jury

Charges (Criminal), "Vehicular Homicide (Death by Auto or Vessel Without Drunk Driving or Refusal)" (rev. June 14, 2004). The other requires only that the actor drive "heedlessly in willful or wanton disregard of the rights or safety of another in a manner so as to endanger or be likely to endanger a person or property." N.J.S.A. 39:4-96.

Anything is possible—but it is not plausible that the jury might have confused the two definitions of recklessness. Each was embedded within the explanation of the relevant offense. The distinctions were clearly drawn, and drawn at the request of defense counsel—who did not object to the charge. State v. Belliard, 415 N.J. Super. 51, 66 (App. Div. 2010) (explaining where "there is a failure to object, it may be presumed that the instructions were adequate." (quoting State v. Morais, 359 N.J. Super. 123, 134-35 (App. Div. 2003))).

The instructions, accurate as to the law, could not have misled the jury. See State v. Baum, 224 N.J. 147, 167 (2016). That it asked for the definition of vehicular homicide recklessness to be repeated did not indicate confusion, so much as care. The panel was given two different meanings for the word, within two contexts.

The instructions tracked the model jury charge and are therefore presumed to be correct. State v. R.B., 183 N.J. 308, 325 (2005). Finally, juries are

presumed to follow instructions. State v. Vega-Lavvegui, 246 N.J. 94, 126 (2021). Thus, defendant's contention lacks merit.

Defendant also contends on appeal that the instruction regarding causation should have been more inclusive—that the judge should have explained that the jury could take into account the presence of a second vehicle, presumably tailgating defendant and causing him to be unable to slow down as he entered the curve, as well as obstructions in the roadway. The judge did give an explicit instruction regarding causation, which tracked the model jury charge. Model Jury Charges (Criminal), "Causation (N.J.S.A. 2C:2-3)" (approved June 10, 2013). He said:

> Now, causation has a special meaning under the law. To establish causation, the State must prove two elements each beyond a reasonable doubt. First, but for the defendant's conduct, the result in question would not have happened. In other words, without defendant's actions, the result would not have occurred. And second, the State must prove the actual result, meaning the death of Nancy Louie[,] must have been within the risk of which the defendant was aware. If not, it must involve the same kind of injury or harm as the probable result and must also not be too remote, too accidental in its occurrences or too [dependent] on another's volition or act to have a just bearing on the defendant's liability or on the gravity of his offense.

"[T]he trial court's obligation to sua sponte deliver a jury instruction when a defendant does not request it and fails to object at trial to its omission" requires

plain error review.  State v. Alexander, 233 N.J. 132, 141-42 (2018).  Thus the error must "prejudicially affect[] the substantial rights of the defendant sufficiently grievous[ly] to justify notice by the reviewing court . . . that of itself the error possessed a clear capacity to bring about an unjust result."  State v. Burns, 192 N.J. 312, 341 (2007) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).  "The alleged error is viewed in the totality of the entire charge, not in isolation."  State v. Chapland, 187 N.J. 275, 289 (2006).  "[T]he effect of any error must be considered 'in light of the overall strength of the State's case[]' . . . ."  State v. Gonzalez, 444 N.J. Super. 62, 71 (App. Div. 2016) (quoting State v. Walker, 203 N.J. 73, 90, (2010)).

In support of the argument, defendant relies on the holding in State v. Parkhill, 461 N.J. Super. 494 (App. Div. 2019).  Parkhill held it was error to omit a causation instruction where causation was directly at issue—but the court there omitted any instruction on causation.  461 N.J. Super. at 499-500.

In this case, the judge instructed the jury on causation, tracking the model charge, although he omitted the specifics which counsel elicited during the testimony, and which both the prosecutor and defense counsel discussed in summation.  That omission—mention of the tailgating BMW and potentially obscuring vegetation—did not create error in light of the language in the charge

18

stating causation must not be "too dependent on another's [] act to have a just bearing on the defendant's liability or the gravity of [his] offense," or "too accidental in its occurrences." Model Jury Charges (Criminal), "Causation (N.J.S.A. 2C:2-3)" (approved June 10, 2013). See State v. Reddish, 181 N.J. 553, 612 (2004) (explaining "[t]he need to comment on the evidence arises only when an instruction modeled solely on the language of an applicable statute or rule of law will not adequately guide the jury's deliberations").

Furthermore, the State's experts agreed that if a vehicle had been tailgating defendant too closely, that car would also have been involved in the crash. Overall, the judge properly defined causation, leaving the jury with the necessary tools to accept or reject defendant's theory of the case.

II.

Defendant also contends that admitting the Van Cleefs' testimony was error, lacking any foundation, while highly prejudicial. We do not agree.

Lay witnesses may only give opinion testimony if it "is rationally based on the witness' perception" and "will assist in understanding the witness' testimony or determining a fact in issue." State v. Singh, 245 N.J. 1, 4 (2021) (quoting N.J.R.E. 701). "[L]ay opinion testimony is limited to what was directly perceived by the witness and may not rest on otherwise inadmissible hearsay."

19                                                                        A-1672-19

Id. at 25 (quoting State v. McLean, 205 N.J. 438, 460 (2011)). "Traditional examples of permissible lay opinions include the speed at which a vehicle was traveling . . . ." McLean, 205 N.J. at 457. Lay witnesses may estimate "a vehicle's speed, based on seeing or hearing it go by." State v. Hyman, 451 N.J. Super. 429, 442 (App. Div. 2017).

The Van Cleefs' specific speed estimates were permissible in this case because they provided additional information to the jury that general phrases such as "fast" or "very fast" or "slow" do not. See Pierson v. Frederickson, 102 N.J. Super. 156, 163 (App. Div. 1968). Defendant attempts to distinguish Frederickson, arguing that the estimated speed in that case was 30 miles per hour, theoretically easier for a lay person to estimate, than the speed here, where the estimates ranged from 100 to 120 miles per hour. Frederickson, however, did not limit the speed about which a lay witness can testify.

In any event, the expert testimony was overwhelming. It established from defendant's EDR that he was traveling 86 miles per hour at the time of the collision going through an S-curve posted for 45 miles per hour, and having a posted recommended speed of 35 miles per hour. The road surface was wet from an earlier rain. The Van Cleefs' estimates alone did not have the capacity to

A-1672-19

change the outcome. That testimony was not so prejudicial as to constitute plain error which warrants reversal in this case. See R. 2:10-2.

III.

It is black-letter law that trial judges have broad discretion over sentencing so long as they adhere to the statutory framework of N.J.S.A. 2C:44-1. State v. Dalziel, 182 N.J. 494, 500 (2005). "When aggravating and mitigating factors are identified, supported by competent, credible evidence in the record, and properly balanced," we affirm. State v. Case, 220 N.J. 49, 65 (2014). While a sentencing judge may make inconsistent findings on the aggravating and mitigating factors, he or she must support those findings with a "reasoned explanation" that is "grounded in competent, credible evidence in the record." Id. at 67.

In sentencing defendant, the court found only one aggravating factor—nine, N.J.S.A. 2C:44-1(a)(9), the need to deter defendant and others. The judge concluded defendant needed to be deterred, but undermined that finding by rejecting aggravating factor three, "[t]he risk that the defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3), and his finding of mitigating factor nine, "[t]he character and attitude of the defendant indicate that he is unlikely to commit another offense," N.J.S.A. 2C:44-1(b)(9). The judge explained

defendant did not pose a risk of reoffending "based upon the facts" and "really his history of not having any other offenses." The judge did not elaborate on what the other "facts" were, however. He nonetheless concluded that there was a need for specific deterrence because there was "no guarantee" that defendant would not reoffend. Later, the judge also said that he was "troubled by defendant's . . . trying to deflect his responsibility onto some other driver." The judge appropriately found factor nine necessary to deter others from, as he put it, "using the roadways as their own road course."

The judge's sentencing analysis omitted mention of defendant's personal situation, other than his lack of a prior criminal or driving history. He did not touch upon defendant's engineering degree, employment, and the mental health issues for which he was in treatment with a psychologist. Those mental health issues followed the incident and included panic attacks and anxiety.

The judge found mitigating factor seven, N.J.S.A. 2C:44-1(b)(7), defendant's lack of criminal history, and factor nine, N.J.S.A. 2C:44-1(b)(9), that defendant was unlikely to commit another offense. He rejected mitigating factors two, four, and eight. N.J.S.A. 2C:44-1(b)(2), (4), (8).

The judge reasoned mitigating factor two was inapplicable because defendant could have readily contemplated that his conduct would cause or

threaten serious harm, and the jury's verdict necessitated a finding of recklessness. The court rejected mitigating factor four—that substantial grounds existed tending to excuse or justify the conduct—because there simply was not enough evidence to establish, to his satisfaction or the jury's, that defendant's speed was necessary to avoid being tailgated by the metallic or blue BMW.

The judge's outright rejection of mitigating factor eight, that the "conduct was the result of circumstances unlikely to recur," is inconsistent with his findings regarding mitigating factor nine. Furthermore, the judge improperly added an element to that statutory mitigating factor, the necessity that he have "certainty that this type of driving behavior is [not] going to or is unlikely to recur." Nothing in the statute requires "certainty."

Mitigating factor eight requires a judge to decide only whether it is likely that a defendant will "act similarly" if in the future he finds himself "in a situation like the one underlying the present case." State v. Jabbour, 118 N.J. 1, 9 (1990). The judge not only wrote in the need for certainty to mitigating factor eight, he also failed to explain how his rejection of this factor was not inconsistent with his finding of mitigating factor nine, itself inconsistent with the judge's discussion of aggravating factor nine.

23

Inconsistent findings can be supported by a reasoned explanation grounded in competent credible evidence in the record. See Case, 220 N.J. at 67. But the record lacks any explanation for the simultaneous conclusions that defendant was not at risk to reoffend but needed to be deterred, and the rejection of the argument that the circumstances—criminally tragic lack of judgment in the face of an unusual highway hazard—were unlikely to recur, while finding defendant to be a person whose character and attitudes made it unlikely that he would reoffend.

Defendant's allocution during the sentence hearing included statements of seemingly profound remorse and regret for having caused a death, while reiterating the defense theory that the accident was caused by someone who was tailgating him. After listening, the judge expressed disappointment at what he construed to be defendant's lack of remorse. Perhaps that observation explains the judge's rejection of mitigating factor eight—but if so, it is not clear from the record.

Well-established precedent mandates that a defendant be sentenced in light of his post-offense conduct. See State v. Jaffe, 220 N.J. Super. 114, 124 (2014). By omitting any discussion of defendant's individual circumstances, the judge overlooked this principle. Additionally, the judge is now obligated to take

24

into account defendant's life and circumstances post-sentence as well. Ibid. As the Supreme Court said in Jaffe, ". . . the trial court should view a defendant as he or she stands before the court on the day of sentencing. This means evidence of post-offense conduct, rehabilitative or otherwise, must be considered in assessing the applicability of, and weight to be given to, aggravating and mitigating factors." Ibid.

There can be no doubt that sentencing is offense oriented. State v. Kiriakakis, 235 N.J. 420, 437 (2019). However, included in the calculus must be at least some consideration of defendant's unique characteristics. Ibid. ("[T]he Code [has a] scheme of sentencing based on the distinct nature of the offense and the unique characteristics of the offender . . . ."). Thus, we vacate the sentence and remand for the judge to resentence defendant. See Bellamy, ___ N.J. Super. ___, ___ (App. Div. 2021) (slip op. at 12).

The judge made inconsistent findings on the sentencing factors without providing a reasoned explanation for doing so, wrote the requirement of "certainty" into mitigating factor eight, and omitted any mention of defendant's individual circumstances. He should reconsider the statutory aggravating and mitigating factors anew. See Bellamy, ___ N.J. Super. ___, ___ (App. Div. 2021) (slip op. at 12). A new sentencing hearing is necessary.

Defendant also contends the trial judge's decision regarding the motor vehicle offenses was error. The judge mistakenly initially found defendant not guilty because of merger at the end of the trial. At sentencing, however, he merged the convictions into the vehicular homicide, stating defendant was guilty. No penalties should have been assessed at all on the merged offenses, nor could they have been "waived." Upon resentencing, the court should clarify whether he intended to convict but did not because he mistakenly believed merger required acquittal, or if he intended to acquit. If he intended to convict, the offenses merge into the vehicular homicide and do not carry a separate penalty.

IV.

Subsequent to the original briefing, defense counsel submitted a supplemental letter brief contending that defendant was entitled to a remand for resentencing so that the court could take into account the new mitigating factor, N.J.S.A. 2C:44-1(b)(14), the age of the defendant if under twenty-six years at the time of the commission of the offense. The Prosecutor's Office responded that the new mitigating should only have prospective application, which is the current state of the law. See Bellamy, ___ N.J. Super. ___ (slip op. at 17). Since the matter is remanded for resentence, however, defendant gains the benefit of

the judge's assessment of the weight to be accorded mitigating factor fourteen, if any. See id. at 14-15.

Affirmed, except that the sentence is vacated and the matter remanded for a new sentence hearing.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

_____

**GEIGER, J.A.D., concurring.**

The jury found defendant guilty of second-degree vehicular homicide, N.J.S.A. 2C:11-5, by driving his vehicle recklessly. "A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." N.J.S.A. 2C:2-2(b)(3). The risk "involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." Ibid.

The jury evidence adduced at trial proved beyond a reasonable doubt that defendant consciously disregarded a substantial and unjustifiable risk by driving his car on a wet road at a dangerously high speed in excess of eighty-five m.p.h.—almost double the posted speed limit—and entered an S-curve without significant braking, causing him to lose control of the vehicle. Defendant's vehicle careened into oncoming traffic and struck a car, killing the car's driver. Yet defendant continued to deflect blame during his allocution by claiming his excessive speed was to distance himself from a tailgating car, thereby painting himself as the victim of an unfortunate situation.

The majority finds that the trial judge's decision to reject mitigating factor eight ("defendant's conduct was the result of circumstances unlikely to recur"),

N.J.S.A. 2C:44-1(b)(8), lacks support in the record "other than defendant's statements at sentencing." I respectfully disagree.

As recognized by the majority, "trial judges are given wide discretion so long as the sentence imposed is within the statutory framework." State v. Dalziel, 182 N.J. 494, 500 (2005). "When the aggravating and mitigating factors are identified, supported by competent, credible evidence in the record, and properly balanced, we must affirm the sentence and not second-guess the sentencing court, provided the sentence does not 'shock the judicial conscience.'" State v. Case, 220 N.J. 49, 65 (2014) (citations omitted).

The trial judge found aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), "[t]he need for deterring the defendant and others from violating the law . . . ." While the judge correctly noted that defendant had no prior criminal or juvenile history, and was not likely to commit another crime, the majority concluded that the judge appropriately found the need to deter others from violating the law by driving recklessly. I agree.

"The need for public safety and deterrence increase proportionally with the degree of the offense." State v. Carey, 168 N.J. 413, 426 (2001) (citing State v. Megargel, 143 N.J. 484, 500 (1996)). As recognized in Carey, "the Legislature increased vehicular homicide from a third-degree offense to a

second-degree offense.  It follows that the need for deterrence increased as part of the legislative plan . . . ."  Ibid.

In addition, aggravating factor nine may be applied to deter the defendant even if the defendant has no prior criminal convictions.  State v. Fuentes, 217 N.J. 57, 80 (2014). "Neither the statutory language nor the case law suggest that a sentencing court can find a need for deterrence under N.J.S.A. 2C:44-1(a)(9) only when the defendant has a prior criminal record."  Ibid.

In many instances, general deterrence "has relatively little weight in the sentencing balance." State v. Locane, 454 N.J. Super. 98, 126 (App. Div. 2018). (citing Fuentes, 217 N.J. at 79).  But vehicular homicide "is an offense which by its very nature makes general deterrence absolutely meaningful."  Ibid. While defendant was not driving drunk, by driving at such an excessive speed under the attendant circumstances, he surely was "a menace to [himself] and to all others" on Millstone River Road that day.  State v. Tischio, 107 N.J. 504, 519 (1987).

Because defendant had no criminal history, the judge found mitigating factors seven "defendant has no history of prior delinquency or criminal activity," N.J.S.A. 2C:44-1(b)(7), and nine, "[t]he character and attitude of the

defendant indicate that he is unlikely to commit another offense," N.J.S.A. 2C:44-1(b)(9), giving both factors "heavy weight."

The judge rejected mitigating factors two, four, and eight. N.J.S.A. 2C:44-1(b)(2), (4), (8). The judge rejected factor two, finding defendant's contention that he "did not contemplate his conduct would cause or threaten serious harm" was "belied by the jury verdict." As to factor four, the existence of "substantial grounds tending to excuse or justify the defendant's conduct though failing to establish a defense," relating to the phantom tailgating BMW, the judge again noted the jury rejected this argument. As to factor eight, the judge found he could not "state with certainty that this type of driving behavior is going to or is unlikely to recur." Although the judge employed the wrong standard by requiring "certainty," the majority criticizes this uncertainty given defendant's clean motor vehicle record, lack or prior criminal convictions, and college student status.[1] The majority found "[n]othing in the record supports that defendant would again be involved in any criminality of any sort, whether vehicular or otherwise."

---

[1] College student status is not relevant in determining whether to apply mitigating factor eight.

A-1672-19

"[W]hen construing a statute, courts must avoid absurd results . . . and read it in a common sense manner that advances the legislative purposes." Builders League of S. Jersey, Inc. v. Burlington Cnty. Plan. Bd., 353 N.J. Super. 4, 21 (App. Div. 2002) (citations omitted). "In order to construe the meaning of the Legislature's selected words, we can also draw inferences based on the statute's overall structure and composition." State v. S.B., 230 N.J. 62, 68 (2017) (citing State v. Hupka, 203 N.J. 222, 231-32 (2010)). Courts "must presume that every word in a statute has meaning and is not mere surplusage." Cast Art Indus., LLC v. KPMG LLP, 209 N.J. 208, 222 (2012) (citation omitted). The court "should try to give effect to every word of the statute[] and should not assume that the Legislature used meaningless language." Med. Soc. of N.J v. N.J. Dep't of L. & Pub. Safety, Div. of Consumer Affs., 120 N.J. 18, 26-27 (1990) (citing Gabin v. Skyline Cabana Club, 54 N.J. 550, 555 (1969)). To the extent possible, legislative language should not "be found to be inoperative, superfluous or meaningless." Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 613 (1999) (quoting In re Sussex Cnty. Mun. Utils. Auth., 198 N.J. Super. 214, 217 (App. Div. 1985)). In addition, "the Legislature is presumed to be aware of judicial construction of its enactments." N.J. Democratic Party, Inc. v.

Samson, 175 N.J. 178, 195 n.6 (2002) (citing Brewer v. Porch, 53 N.J. 167, 174 (1969)).

On remand, the judge must reconsider whether mitigating factor eight applies but for reasons different than those expressed by the trial judge. See State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (stating an appellate court is "free to affirm the trial court's decision on grounds different from those relied upon by the trial court"). The judge should be mindful that standing alone, defendant's lack of a criminal record does not support application of mitigating factor eight.

Generally, mitigating factor eight applies in rare situations where the circumstances that led to the defendant's conduct were unique and thus unlikely to repeat themselves. For example, in State v. L.V., 410 N.J. Super. 90, 111 (App. Div. 2009), the sentencing judge found mitigating factor eight where a mentally and severely intellectually challenged defendant had been the victim of repeated sexual abuse by her father, who forced her to toss her newborn baby out of a window. Id. at 96-97, 112-13. He was the father of the baby and had been her abuser for many years. Id. at 94-96. We found the trial court appropriately applied factor eight because the father's abuse and directive were the cause of the defendant's crimes. Id. at 112. His criminal conduct had been

6                                                                    A-1672-19

brought to light, and it was unlikely that the defendant would find herself in that situation again.  Id. at 111.  She was clearly a coerced and unwilling participant and victim of her father's crimes.

Another example is where a police officer was convicted of official misconduct and forfeited his job, precluding the defendant from serving as a law enforcement officer in the future.  State v. Rice, 425 N.J. Super. 375, 383 (App. Div. 2012).  In that situation, the defendant's conduct resulted from circumstances unlikely to recur because his conviction effectively precludes the defendant from committing similar official misconduct in the future.  Ibid.

Here, the judge must determine whether there were unusual circumstances that make it unlikely that defendant's conduct will reoccur.  In doing so, the judge may consider that the jury rejected defendant's contention that his reckless driving was attributable to a BMW that was allegedly tailgating him.  Moreover, there is no evidence that defendant is mentally or intellectually challenged, the victim of abuse, addicted to alcohol or controlled dangerous substances, or the victim of a difficult childhood.  Cf. L.V., 410 N.J. Super. at 112-13.  Instead, the verdict is premised on a finding that defendant's reckless driving was the cause of the accident that resulted in the victim's death and that the accident resulted from circumstances within defendant's direct control.

A-1672-19

Interpreting mitigating factor eight to allow its application based primarily on the defendant's lack of prior delinquency or criminal activity would render it duplicative of mitigating factor seven and thereby superfluous, a result this court should avoid. See Franklin Tower One, 157 N.J. at 613. Moreover, limiting the application of mitigating factor eight to precipitating circumstances that were actually unique and thus unlikely to repeat themselves aligns it more closely with "the statute's overall structure and composition." S.B., 230 N.J. at 68.

Nevertheless, I agree that a remand for resentencing is required because the judge used an incorrect standard when considering whether to apply mitigating factor eight.

The judge found that aggravating factor nine was slightly outweighed by mitigating factors seven and nine. The record supports that finding. See State v. Scher, 278 N.J. Super. 249, 273 (App. Div. 1994) (finding "no basis to disturb the quantum of the sentence imposed" despite the trial judge's improper application of aggravating factors one, N.J.S.A. 2C:44-1(a)(1), and two, N.J.S.A. 2C:44-1(a)(2), because "the risk that [the] defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3), and the need for specific and general deterrence, N.J.S.A. 2C:44-1(a)(9), demand paramountcy over all other considerations" where the defendant was convicted of reckless manslaughter,

N.J.S.A. 2C:11-4(b)(1), vehicular homicide, and related offenses).  When trial judges "exercise discretion in accordance with the principles set forth in the Code and defined by [the Supreme Court], they need fear no second-guessing." State v. Bieniek, 200 N.J. 601, 607-08 (2010) (quoting State v. Ghertler, 114 N.J. 383, 384 (1989)).  The sole exception is where the sentence is so manifestly excessive that it "shocks the judicial conscience."  State v. O'Donnell, 117 N.J. 210, 215-16 (1989) (citing State v. Roth, 95 N.J. 334, 365 (1984)).

The judge imposed the minimum five-year NERA term for the second-degree vehicular homicide.  See N.J.S.A. 2C:43-6(a)(2) (the ordinary term for a second-degree crime is between five and ten years).  Therefore, the only mechanism to impose a shorter term of imprisonment would be to downgrade the offense one degree lower for sentencing purposes pursuant to N.J.S.A. 2C:44-1(f)(2).

A sentencing downgrade under N.J.S.A. 2C:44-1(f)(2) is appropriate only if "the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands" the downgrade.  See also Megargel, 143 N.J. at 496; State v. L.V., 410 N.J. Super. 90, 112-13 (App. Div. 2009).  "[T]he court must find that there are 'compelling' reasons 'in addition to, and separate from,' the mitigating factors, which require

the downgrade in the interest of justice." Locane, 454 N.J. Super. at 121 (quoting State v. Jones, 197 N.J. Super. 604, 607 (App. Div. 1984)). See also Megargel, 143 N.J. at 505; L.V., 410 N.J. Super. at 112-13. "The interest of justice analysis does not include consideration of defendant's overall character or contributions to the community." Locane, 454 N.J. Super. at 122 (citing State v. Lake, 408 N.J. Super. 313, 328-29 (App. Div. 2009)).

"The focus remains on the crime, as the downgrade statute 'is an offense-oriented provision.'" Id. at 121 (quoting Lake, 408 N.J. Super. at 328). "The paramount reason we focus on the severity of the crime is to assure the protection of the public and the deterrence of others. The higher the degree of the crime, the greater the public need for protection and the more need for deterrence." Id. at 122 (quoting Megargel, 143 N.J. at 500). In deciding whether to downgrade an offense, the court should consider the degree of the crime, whether the surrounding circumstances make the offense similar to one of a lesser degree, and the defendant's characteristics as they relate to the offense. Megargel, 143 N.J. at 500-01; Rice, 425 N.J. Super. at 384. The severity of the crime is the most important factor. Megargel, 143 N.J. at 500. "Where the crime includes an enhanced penalty, . . . 'trial courts must exercise extreme caution[]' before ordering a downgrade." Locane, 454 N.J. Super. at 122 (second alteration

10

in original) (quoting Megargel, 143 N.J. at 502).  See also Cannel, N.J. Criminal Code Annotated, cmt. 10 on N.J.S.A. 2C:44-1 (2021) ("A court should sentence to one degree lower only where the 'interest of justice' so requires, and it should be reluctant for crimes so serious that they carry sentences higher than those normal for the degree of crime." (citing State v. Mirakaj, 268 N.J. Super. 48 (App. Div. 1993))).  Those factors all militated strongly against downgrading the second-degree vehicular homicide.  The "interests of justice" did not require sentencing defendant one degree lower.

Moreover, where the Legislature has provided an enhanced penalty for an offense, "the downgrade of that offense requires more compelling reasons than the downgrade of an offense for which the Legislature has not attached an enhanced penalty."  Rice, 425 N.J. Super. at 385 (quoting Megargel, 143 N.J. at 502).  A sentencing court should not use its discretion to circumvent the legislative design.  State v. Lopez, 395 N.J. Super. 98, 108-09 (App. Div. 2007). The Legislature subjected second-degree vehicular homicide to the parole ineligibility and mandatory parole supervision under NERA.

Here, the judge rejected the defendant's contention that the mitigating factors substantially outweighed the aggravating factors.  On remand, the judge

must reconsider mitigating factor eight, determine whether it applies, and assign appropriate weight if it does.

In addition, the vehicular homicide was committed on January 4, 2015, when defendant was twenty-one years old. The Legislature subsequently enacted N.J.S.A. 2C:44-1(b)(14)—a new mitigating factor which applies when a defendant is less than twenty-six years old at the time of the crime. See L. 2020, c. 110 (eff. Oct. 19, 2020). The new mitigating factor is effective October 19, 2020, ibid., and is to be applied prospectively. State v. Bellamy, ___ N.J. Super. ___, ___ (App. Div. 2021) (slip. op. at 20). Since the case is being remanded for resentencing, the judge must view defendant "as he stands before the court that day." State v. Randolph, 210 N.J. 330 (2012). Accordingly, mitigating factor fourteen is applicable and must be given appropriate weight. See id. at 14-15.

The judge must then reassess whether the mitigating factors substantially outweigh the aggravating factors, and if they do, apply the second prong of the test for determining whether a sentencing downgrade is appropriate.

Finally, I agree with the majority that a remand is also needed for the judge to clarify whether he intended to convict or acquit defendant of the related motor vehicle offenses or to merge those offenses.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12                                                    A-1672-19