**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3893-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SAHIL KULGOD,

    Defendant-Appellant.

_____

Argued March 13, 2024 – Decided April 10, 2024

Before Judges Firko and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 15-04-0231.

John P. Flynn, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; John P. Flynn, of counsel and on the briefs).

Bridgett Nichole Dudding, Assistant Prosecutor, argued the cause for respondent (John P. McDonald, Somerset County Prosecutor, attorney; Bridgett Nichole Dudding, of counsel and on the brief).

PER CURIAM

In 2019, defendant Sahil Kulgod was convicted at trial by a jury of reckless vehicular homicide—a second-degree crime subject to enhanced punishment under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2(d)(3). This case returns to us for a third time to address sentencing issues. At the latest resentencing hearing, the judge imposed a five-year prison term—the lowest sentence authorized for a second-degree crime.[1] Defendant asks us to exercise original jurisdiction and impose a downgraded sentence within the third-degree range —four years—pursuant to N.J.S.A. 2C:44-1(f)(2). We have no basis upon which to reduce the five-year prison term. This time, there was no abuse of sentencing discretion. Nor does the five-year term in any way shock the judicial conscience. Accordingly, we affirm.

## I.

This case has a long history. On the morning of January 4, 2015, defendant—a twenty-one-year-old college student home on winter break—drove southbound on a road in Hillsborough Township where the posted speed

---

[1] The range of ordinary sentences for a second-degree conviction is five to ten years. N.J.S.A. 2C:43-6(a)(2). The range of ordinary sentences for a third-degree conviction is three to five years. N.J.S.A. 2C:43-6(a)(3). The minimum ordinary term in the second-degree range is the same as the maximum ordinary term in the third-degree range.

A-3893-22

limit was forty-five miles per hour. Defendant approached a sharp S-curve at a speed of approximately eighty-six miles per hour, passing a warning sign recommending a speed of thirty-five miles per hour through the curve. The road surface was wet from earlier rainfall. Defendant lost control of his vehicle, crossed the double yellow line, and struck an oncoming car nearly head on. The crash caused the near-immediate death of the other driver, Nancy Louie.

In September 2019, defendant was tried before a jury and convicted of second-degree vehicular homicide, N.J.S.A. 2C:11-5. On November 8, 2019, the trial judge sentenced defendant to a term of five years' imprisonment subject to NERA. The judge denied the State's motion to consider defendant's Twitter posts in which he boasted about how fast his car could go, including around curves.[2]

---

[2] The trial court had previously excluded the Twitter posts at the jury trial. The relevant posts read:

> The number of times I've seen triple digit speeds is probably wayyy more than what my engineers had in mind .... #shhh (posted on December 23, 2014).

> I still have speedstreaks from . . . all those times I was going over 110 mph teehee ;) #vroom (posted on December 27, 2014).

A-3893-22

The trial judge found only one aggravating factor, aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring the defendant and others from violating the law"). The judge found two mitigating factors, mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) ("[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense"), and mitigating factor nine, N.J.S.A. 2C:44-1(b)(9) ("[t]he character and attitude of the defendant indicate that the defendant is unlikely to commit another offense").

The judge rejected defendant's request to apply mitigating factors two, N.J.S.A. 2C:44-1(b)(2) ("[t]he defendant did not contemplate that the defendant's conduct would cause or threaten serious harm"); four, N.J.S.A. 2C:44-1(b)(4) ("[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense"); and eight, N.J.S.A. 2C:44-1(b)(2)(8) ("[t]he defendant's conduct was the result of circumstances

Crossed 30,000 miles today!!! Had the honor of crossing the milestone right in front of Princeton Junction!! squeeee !!! (posted on December 27, 2014).

And how Epic!!! in 2nd gear at 4000 rpm in a 4-wheel-drift going around the curve opposite Princeton Junction station with [music] on. (posted on December 27, 2014).

4

unlikely to recur"). The judge concluded the mitigating factors "slightly outweighed" the sole aggravating factor.

In September 2021, we affirmed defendant's conviction but remanded for resentencing. State v. Kulgod (Kulgod I), No. A-1672-19 (App. Div. Sept. 10, 2021) (slip op. at 1). We held the trial judge's "outright rejection of mitigating factor eight . . . [was] inconsistent with his findings regarding mitigating factor nine." Id. at 8. We further noted the judge "improperly added an element to that statutory mitigating factor, the necessity that he have 'certainty that this type of driving behavior is [not] going to or is unlikely to recur.' Nothing in the statute requires 'certainty.'" Ibid. We explained mitigating factor eight "requires a judge to decide only whether it is likely that a defendant will 'act similarly' if in the future he finds himself 'in a situation like the one underlying the present case.'" Ibid. (quoting State v. Jabbour, 118 N.J. 1, 9 (1990)).

Because the trial judge's findings were inconsistent, we remanded for a new sentencing hearing. Id. at 9. We also instructed the court on remand to apply the newly enacted youth mitigating factor, N.J.S.A. 2C:44-1(b)(14) ("the defendant was under [twenty-six] years of age at the time of the commission of the offense"). Id. at 9.

A-3893-22

The resentencing hearing was conducted by the same judge on March 18, 2022. The trial judge considered "voluminous exhibits" submitted by defendant, including documents showing that he had no driving infractions during a five-year period before his trial.

The defense further established that in 2016, defendant graduated from college with a degree in mechanical engineering. He received a "model scholar" award and completed several automotive-related programs, including an internship with a major automaker's research and development department. After graduating, defendant worked for another major automaker as a "Product Development Systems Engineer," which involved "developing advanced driving systems, such as safety features, lane centering, pedestrian spotting, and blind spot monitoring."

The defense also presented evidence that after the fatal crash, defendant received psychotherapy from two clinical psychologists. He was diagnosed with and treated for adjustment disorder with mixed anxiety and depressed mood and post-traumatic stress disorder (PTSD) due to the accident.

Thirty-one individuals submitted letters on defendant's behalf. His friends, family, and colleagues attested to his personal characteristics, including

6

his "maturity," "most caring and giving" nature, "highly cautious, aware, and defensive" driving, and "deep[] remorse."

During his allocution, defendant stated:

> I am sorry. It is an insufficient word and it feels pathetic and useless as it leaves my mouth . . . No amount of elaborate decorating of the word is going to help it carry the weight I'm trying to give it. Understandably there is frustration—likely the frustration that the idea that after such a tragedy I would be granted any kind of relief, but in reality, even if I was somehow released from prison instantly . . . I would still be in a kind of . . . prison. That prison is knowing and living with the awareness that the Louie family has lost Mrs. Louie that . . . I know I could have [acted] differently, but I did not. [I] went too fast into that curve. I crashed into Mrs. Louie. And now Mrs. Louie is gone. I am sorry.

The trial judge found defendant was sincere in his apology. The judge again denied the State's motion to consider defendant's Twitter posts.

As before, the trial judge found aggravating factor nine. But this time, the judge applied mitigating factors seven, eight, nine, and fourteen. He determined the mitigating factors substantially outweighed the sole aggravating factor. The trial judge also found "it would be in the interest of justice" to downgrade defendant's sentence. The judge thereupon imposed a downgraded term of four years imprisonment subject to NERA.

A-3893-22

The State appealed the application of the sentence downgrade provision, N.J.S.A. 2C:44-1(f)(2).  On April 4, 2023,[3] we vacated defendant's sentence and remanded the case for a second resentencing hearing before a different judge. State v. Kulgod (Kulgod II), No. A-2151-21 (App. Div. Apr. 4. 2023) (slip op. at 1), cert. denied, 254 N.J. 74 (2023).  We concluded the trial judge "provided no explanation for finding the interest of justice prong [of N.J.S.A. 2C:44-1(f)(2)] was satisfied."  Id. at 6.  Further, we stressed the trial court did not consider "whether there were 'compelling reasons in addition to, and separate from,' the mitigating factors, which require the downgrade in the interest of justice."  Ibid. (internal quotation marks omitted).  We also held the trial judge abused his discretion in refusing to consider defendant's Twitter posts.  Id. at 5. We instructed that on remand, the new resentencing judge was to consider the relevant posts.  Ibid.

---

[3]  Defendant was released from prison on April 1, 2023—three days before we issued Kulgod II—at which time he began serving his three-year period of parole required by NERA.  We note the three-year parole term is prescribed for second-degree convictions, N.J.S.A. 2C:43-7.2(c).  That parole term cannot be reduced even if defendant were to be sentenced pursuant to N.J.S.A. 2C:44-1(f)(2) to a term of imprisonment "appropriate to a crime of one degree lower than that of the crime for which the defendant was convicted."  Cf. State v. Nance, 228 N.J. 378, 398-99 (2017) (the presumption of imprisonment survives a reduction in the degree of sentencing).

A-3893-22

Defendant filed a petition for certification to the Supreme Court and sought a stay of our decision. We denied defendant's request for a stay, as did the Supreme Court. On May 16, 2023, the Supreme Court denied defendant's petition for certification. 254 N.J. 74 (2023).

On August 10, 2023, Judge Peter J. Tober conducted the third sentencing hearing in this case. To avoid needless repetition, we focus on new information presented to Judge Tober at the third sentencing hearing, although he considered all evidence and arguments presented by both defendant and the prosecutor. Once again, defense counsel submitted numerous letters of support. For example, the owner of a consulting firm wrote that defendant began working at his company in August 2022 through a work release program. Defendant became a full-time employee when he was released from the Department of Corrections' custody. The owner described defendant as "grounded," "thoughtful," and "an asset to his business."

Defense counsel argued defendant's parents were facing "significant health and financial issues." Defendant's father was placed on disability in August 2022 and lost his job in January 2023. Defendant's mother explained how defendant took on additional responsibilities to help his parents when he was released from prison. Defendant's family relied on his income "to pay their

mortgage, their significant medical debts, and the $250,000 owed to" defendant's trial counsel.

Citing these circumstances, defense counsel asked the judge to find mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11) ("[t]he imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents").

During his allocution, defendant again expressed his remorse and acknowledged his responsibility for the Louie family's pain. He stated, "I will always think of the Louie family, and I will always seek out examples and reminders of the grief and pain the Louie family feels such that I never forget that pain and never forget my role in that pain."

Judge Tober found aggravating factor nine and mitigating factors seven, nine, and fourteen. He found defendant's Tweets rendered "mitigating factor [eight] inapplicable," explaining,

> [i]f you look back at the conduct that happened in January of 2015 and you fold in the Tweets indicating that's he's engaged in some fast driving before, I don't think that conduct in 2015 was the result of circumstances unlikely to recur. It's probably happened many times before and it ended with this tragic accident.

Judge Tober also distinguished mitigating factors eight and nine, noting factor nine is about "the character and attitude of the defendant." The judge found mitigating factor nine applied, explaining:

> I think his character and attitude indicate he would be unlikely to commit another offense like this in the future. And we're in the unusual situation really of being eight years after the offense. . . . So we do have a little bit longer period of time for the defendant to exhibit character and attitude indicating unlikelihood of committing another offense.

Although he sympathized with defendant's family, Judge Tober rejected mitigating factor eleven, noting, "[w]hile certainly taking many significant financial steps back, [the family is] still in the house, there may not be the same type of insurance in place that there was when [defendant's father] had a job and was able to treat and maybe his medical condition has suffered." He concluded defendant's incarceration was not an excessive hardship.

Ultimately, Judge Tober did not "find that the mitigating factors substantially outweigh[ed] [the] aggravating factors sufficient to downgrade this from a second[-degree offense] to a third[-degree offense]." He thereupon resentenced defendant to the lowest prison term in the second-degree range—five years, subject to NERA.

A-3893-22

This appeal follows. Defendant raises the following contentions for our consideration:

> POINT I
>
> THE TRIAL COURT FAILED TO FIND AMPLY SUPPORTED MITIGATING FACTORS.
>
> A. The Trial Court Erred In Failing To Consider All The Evidence In The Record In Support Of Mitigating Factor Eight And Instead Entirely Reject[ed] This Factor Based Solely On Four Old Twitter Posts.
>
> B. The Trial Court Erred In Failing To Ascribe Any Weight To Mitigating Factor Eleven Despite The Unique Hardships Faced By [Defendant's] Family.
>
> POINT II
>
> THE TRIAL COURT ERRED IN ASCRIBING SIGNIFICANT WEIGHT TO AGGRAVATING FACTOR NINE BY DOUBLE-COUNTING ELEMENTS OF THE OFFENSE AND WITHOUT A NEED FOR SPECIFIC DETERRENCE.
>
> POINT III
>
> THIS COURT SHOULD EXERCISE ORIGINAL JURISDICTION AND IMPOSE A DOWNGRADED SENTENCE OF FOUR YEARS SUBJECT TO NERA.

Defendant raises the following contentions in his reply brief:

> POINT I
>
> THE TRIAL COURT FAILED TO FIND AMPLY SUPPORTED MITIGATING FACTORS.

12

A. When Rejecting Mitigating Factor Eight, The Trial Court Did Not Consider [Defendant's] (1) Documented Mental Health Treatment Following The Accident, (2) Deep Remorse For His Actions, (3) Commitment To Pursuing A Career In Automotive Safety, (4) Unblemished Driving Record, And (5) Maturation From A Twenty-One-Year-Old To A Twenty-Nine-Year-Old.

B. The Trial Court Erred In Failing To Ascribe Any Weight To Mitigating Factor Eleven Despite The Unique Hardships Faced By [Defendant's] Family.

POINT II

THE TRIAL COURT DOUBLE-COUNTED ELEMENTS OF THE OFFENSE IN ASCRIBING HEAVY WEIGHT TO AGGRAVATING FACTOR NINE.

POINT III

[DEFENDANT'S] UNIQUE, PERSONAL CHARACTERISTIC[S], AS THEY RELATE TO THE OFFENSE, SUPPORT A DOWNGRADED SENTEN[]CE.

II.

We begin our analysis by acknowledging "[our] review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." State v. Torres, 246 N.J. 246, 272 (2021); State v. Blackmon, 202 N.J. 283, 297 (2010). A reviewing court is "deferential to sentencing

13

determinations and 'must not substitute [its] judgment for that of the sentencing court.'" State v. Rivera, 249 N.J. 285, 297 (2021) (quoting State v. Fuentes, 217 N.J. 57, 70 (2014)). We must affirm a sentence "unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" Id. at 297-98 (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

If, however, the sentencing court "fails to identify relevant aggravating and mitigating factors, or merely enumerates them, or forgoes a qualitative analysis, or provides little 'insight into the sentencing decision,' then the deferential standard will not apply." State v. Case, 220 N.J. 48, 65 (2014) (quoting State v. Kruse, 105 N.J. 354, 363 (1987)). "Proper sentencing thus requires an explicit and full statement of aggravating and mitigating factors and how they are weighed and balanced." State v. McFarlane, 224 N.J. 458, 466 (2016) (quoting State v. Randolph, 210 N.J. 330, 348 (2012)). "[W]here mitigating factors are amply based in the record before the sentencing judge, they must be found." State v. Dalziel, 182 N.J. 494, 504 (2005); see Rivera, 249

N.J. at 298 ("Mitigating factors that are suggested in the record or brought to the court's attention should not be ignored.").

A.

We first address defendant's contention Judge Tober abused his discretion "in failing to ascribe any weight to mitigating factor eight," that defendant's conduct was the result of circumstances unlikely to recur. Defendant contends the resentencing judge "myopically focused on four old Twitter posts from a twenty-one-year-old's parody account of a car." Further, defendant argues, the resentencing judge did not discuss "the extensive amount of other recent evidence" supporting the conclusion defendant's conduct was the result of circumstances unlikely to recur. Specifically, defendant relies on:

> (1) documented treatment for PTSD following the accident; (2) deep remorse for his actions; (3) commitment to pursuing a career in automotive safety; (4) maturation from a twenty-one-year-old to a twenty-nine-year-old by the time of the resentencing; and (5) an unblemished driving record in the five years before his trial. . . .

We conclude Judge Tober properly addressed mitigating factor eight. The judge acknowledged defendant's education, employment, lack of criminal record, experiences in the halfway house and prison, character, and attitude. The

15

judge further acknowledged the "longer period of time" between the fatal crash and resentencing.

Judge Tober also carefully analyzed defendant's Twitter posts—as per our remand instructions. <u>Kulgod II</u>, at 12. He specifically addressed defendant's argument that the "State cherry picked the [four] best [T]weets," and that the Twitter account is "not replete with references to speeding, it's not replete with references to cars."[4] Judge Tober disagreed, reasoning:

> Now, I think what those [T]weets do is make mitigating factor [eight] inapplicable to this case. If you look back at the conduct that happened in January of 2015 and you fold in the [T]weets indicating that he's engaged in some fast driving before, I don't think that conduct in 2015 was the result of circumstances unlikely to recur. It's probably happened many times before and it ended with this tragic accident. So I reject factor [eight] and I give it no weight.
>
> Now, [mitigating] factor number [nine] I think is a different story. That is not illuminated by the [T]weets, the character and attitude of the defendant indicate that he is unlikely to commit another offense. And [defense counsel] spelled this out very well in her brief. She talked about . . . what he's done at the halfway house, what he's done while he was in prison, the education he pursued while this case was

---

[4]  As Judge Tober aptly noted, defendant "does have a Twitter account for his own car and we can talk about that, . . . —some might find that amusing and humorous, others might find it indicative of a fascination with vehicles and their speed."

16

proceeding through the criminal justice system. He was out in Detroit at a very prestigious employment and training-type process.

I do believe factor [nine] applies. I think his character and attitude indicate he would be unlikely to commit another offense like this in the future. And we're in the unusual situation really of being eight years after the offense because of the trips up and down the appellate process and the length it took to get this matter to trial. So we do have a little bit longer period of time for the defendant to exhibit character and attitude indicating unlikelihood of committing another offense. But nonetheless, I find factor [nine] to apply and give it weight.

In sum, Judge Tober carefully considered the evidence and arguments of the parties and thoroughly explained his reasons for rejecting mitigating factor eight. See Case, 220 N.J. at 65. We see no abuse of discretion. See Torres, 246 N.J. at 272.

We add that despite defendant's claim, Judge Tober did consider defendant's neurological maturation. The judge stated, "[s]tatistically, [twenty-nine]-year-old drivers like [defendant] are more likely to drive safer than [twenty-one]-year old drivers." Relatedly, the judge found the youth mitigating factor "unquestionably applie[d] and [he gave] that significant weight because [defendant] was under [twenty-six] years of age at the time of the commission of the offense."

17

B.

Defendant contends the resentencing court "erred in failing to ascribe any weight to mitigating factor eleven despite the unique hardship faced by [defendant]'s family." Defendant argues:

> It is extremely rare for an incarcerated defendant to earn his way into a halfway house with perfect behavior in prison, obtain a job under a work release program, have that employer hire him as a full-time employee upon release, and then lose that job as a result [of] his sentence being increased and being reincarcerated to a prison.

As noted, mitigating factor eleven applies where "imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents." N.J.S.A. 2C:44-1(b)(11).

Defendant argues his parents should be considered dependents for purposes of the family hardship mitigating factor because "the typical parent-child relationship has flipped." Defendant cites to Black's Law Dictionary's definition of dependent as "[s]omeone who relies on another for support; one not able to exist or sustain oneself without the power or aid of someone else."

We read Judge Tober's decision as rejecting defendant's argument the hardship on his family would be excessive, not that parents cannot be deemed

to be "dependents" for purposes of N.J.S.A. 2C:44-1(b)(11). Judge Tober explained:

> [I]t's clear that imprisonment would . . . result in some difficulties for this family but this [c]ourt is faced with that argument all the time . . . Yes, [defendant] is certainly going to be affected. But the idea that it's excessive hardship, I decline to apply it. While certainly taking many significant financial steps back, [defendant's family is] still in the house, there may not be the same type of insurance in place that there was when [defendant's father] had a job . . . But all told, it is a son, a dependent, and I understand [defense counsel's] efforts to portray it the other way around, that the son has become the person providing and not the dependent. Still, you have a young [twenty-nine]-year-old with parents who both at one point worked. They're still in the home. I don't think imprisonment is an excessive hardship and I decline to apply factor [eleven].

The record thus shows Judge Tober analyzed the pertinent facts and provided insight into his decision. See Case, 220 N.J. at 65; see also State v. Comer, 249 N.J. 359, 404 (2022) (Sentencing courts must "explain and make a thorough record of their findings to ensure fairness and facilitate review."). We decline to second-guess his conclusion. See Case, 220 N.J. at 65.

## C.

We turn next to defendant's contention that the resentencing court "erred in ascribing significant weight to aggravating factor nine," the need for deterring

19

the defendant and others from violating the law, "by double-counting elements of the offense and without a need for specific deterrence." Specifically, defendant argues Judge Tober's "reliance on the fact that this case involved reckless driving that resulted in a fatality constitutes impermissible double[-]counting."

Our Supreme Court has "recognized that facts that established elements of a crime for which a defendant is being sentenced should not be considered as aggravating circumstances in determining that sentence." State v. Kromphold, 162 N.J. 345, 353 (2000) (citing State v. Yarbough, 100 N.J. 627, 633 (1985)). Otherwise, "every offense arguably would implicate aggravating factors merely by its commission, thereby eroding the basis for the gradation of offenses and the distinction between elements and aggravating circumstances." Ibid.; see Fuentes, 217 N.J. at 75.

Here, defendant was convicted of second-degree reckless vehicular homicide: "[c]riminal homicide constitutes reckless vehicular homicide when it is caused by driving a vehicle . . . recklessly." N.J.S.A. 2C:11-5(a). In finding aggravating factor nine, Judge Tober stated:

> I think there's especially a need to deter . . . here. We've all been on the roads and you hear a car, a loud rumbling sound and it flies by you at God knows what speed and you think to yourself oh my goodness, he's

going to kill somebody and it's exactly what happened here.

[A]ggravating factor [nine] is extremely present in this case and I give it some significant weight. There is a need to deter him and others who would operate a vehicle like him from violating the law and driving in a manner that could kill somebody and did kill somebody in this case. So I give aggravating factor [nine] application, I give it strong weight.

We are satisfied Judge Tober focused on the need to deter defendant and others from driving at excessive speeds. We stress this is not a situation where the sentencing court improperly viewed the victim's death as an aggravating factor. See State v. Carey, 168 N.J. 413, 425 (2001) (deaths caused by vehicular homicide may not be viewed as an aggravating factor in a homicide case). Furthermore, defendant's conduct far exceeded the level of recklessness needed to prove the vehicular homicide offense. Cf. State v. Varona, 242 N.J. Super. 474, 492 (App. Div. 1990) (sentencing court may consider that the defendant did more than was minimally required to satisfy an element of the crime).

III.

We turn next to defendant's contention he is entitled to a sentence downgrade pursuant to N.J.S.A. 2C:44-1(f)(2). Specifically, defendant argues the interests of justice demand a sentence downgrade because: (1) the circumstances of his offense make it similar to third-degree reckless vehicular

21

homicide, and (2) defendant's unique, personal characteristics "reflect[] a transient lapse in judgment and presents a diminished need to deter." Those characteristics, defendant argues, include his age, remorse, driving record, and "commitment to using his engineering degree to contribute to a safer community." Furthermore, because there is an "extensive and largely undisputed factual record," defendant asks us to exercise original jurisdiction "to determine whether the interests of justice demand a downgrade rather than remand this matter for a fourth sentencing hearing."

We acknowledge our jurisdiction to review sentences includes the power to make new findings of fact, to reach independent determinations of the facts, and to supplement the record on appeal. State v. Jarbath, 114 N.J. 394, 412 (1989); R. 2:10-3. However, "the exercise of appellate original jurisdiction over sentencing should not occur regularly or routinely; . . . a remand to the trial court for resentencing is strongly to be preferred." State v. Bell, 250 N.J. 519, 544-45 (2022) (quoting Jarbath, 114 N.J. at 411). When "a remand will work an injustice by continuing" the defendant's incarceration, then it is appropriate for an appellate court to exercise original jurisdiction and resentence the defendant. State v. L.V., 410 N.J. Super. 90, 113 (App. Div. 2009).

But of course, any such remand presupposes an injustice. Here, we see none. In reaching that conclusion, we stress "the standard governing the downgrading of a defendant's sentence . . . is high." State v. Megargel, 143 N.J. 484, 500 (1996).

N.J.S.A. 2C:44-1(f)(1) provides:

(1) Except for the crime of murder, unless the preponderance of aggravating or mitigating factors, as set forth in subsections a. and b. of this section, weighs in favor of a higher or lower term within the limits provided in N.J.S.[A.]2C:43-6, when a court determines that a sentence of imprisonment is warranted, it shall impose sentence as follows:

(a) To a term of [twenty] years for aggravated manslaughter or kidnapping pursuant to paragraph (1) of subsection c. of N.J.S.[A.]2C:13-1 when the offense constitutes a crime of the first degree;

(b) Except as provided in subparagraph (a) of this paragraph to a term of [fifteen] years for a crime of the first degree;

(c) To a term of seven years for a crime of the second degree;

(d) To a term of four years for a crime of the third degree; and

(e) To a term of nine months for a crime of the fourth degree.

23

In Megargel, our Supreme Court established a two-part test to justify a sentence downgrade: (1) "[t]he court must be 'clearly convinced that the mitigating factors substantially outweigh the aggravating ones'"; and (2) "the interest of justice demand[s] a downgraded sentence." 143 N.J. at 496 (quoting N.J.S.A. 2C:44-1(f)(2)). In applying this test, "the severity of the crime" is "the most . . . important factor." Id. at 500. Furthermore, "[t]he reasons justifying a downgrade must be 'compelling,' and something in addition to and separate from, the mitigating factors that substantially outweigh the aggravating factors." State v. Rice, 425 N.J. Super. 375, 384 (App. Div. 2012) (quoting Megargel, 143 N.J. at 505) (emphasis added).

Contrary to defendant's contention, the facts of the crime he committed do not make it similar to third-degree reckless vehicular homicide. N.J.S.A. 2C:11-5(b)(5) provides:

> Reckless vehicular homicide is a crime of the third degree if the defendant proves by a preponderance of the evidence that the defendant did not commit any conduct constituting driving a vehicle . . . recklessly other than failing to maintain a lane in violation of [N.J.S.A.] 39:4-88.

This was not a case of merely failing to maintain a lane. Defendant drove his car at high-speed entering an S-curve on a wet road, reaching eighty-six miles per hour five seconds before striking the victim's car head-on in a forty-

24

five-mile-per-hour zone. He drove past a warning sign recommending a speed of thirty-five miles per hour. Further, the record shows defendant was driving in a residential area with signs alerting drivers about a school bus stop, a hidden driveway, horseback riders, and a T-intersection after the curve. Without question, his conduct constituted second-degree vehicular homicide, not third-degree vehicular homicide.

Furthermore, in State v. Locane, we held, "[t]he interest of justice analysis does not include consideration of defendant's overall character or contributions to the community." 454 N.J. Super. 98, 122 (App. Div. 2018). We explained that a sentencing court may "consider the 'characteristics or behavior of the offender[,]' but only to the extent 'they relate to the offense itself and give fuller context to the offense circumstances.'" Id. at 121 (quoting State v. Lake, 408 N.J. Super. 313, 328 (App. Div. 2009)) (alteration in original); see L.V., 410 N.J. Super. at 112-13 (downgrading the defendant's sentence considering her mental illness, young age, limited intelligence, cognitive inabilities, language and social barriers, and history of sexual abuse).

We acknowledge defendant has not incurred new charges. He has instead pursued an education and career related to automobile safety. Numerous character letters were submitted on his behalf. Those circumstances, while

commendable, do not satisfy the interests of justice test, especially when, as in this case, defendant is subject to enhanced punishment. See Locane, 454 N.J. Super. at 122, 130. As we noted in Kulgod II:

> where the Legislature has provided an enhanced penalty for an offense, "the downgrade of that offense requires more compelling reasons than the downgrade of an offense for which the Legislature has not attached an enhanced penalty." Rice, 425 N.J. Super. at 385 (quoting Megargel, 143 N.J. at 502). A sentencing court should not use its discretion to circumvent the legislative design. State v. Lopez, 395 N.J. Super. 98, 108-09 (App. Div. 2007). The Legislature subjected second-degree vehicular homicide to the parole ineligibility and mandatory parole supervision under NERA.
>
> [Kulgod II at 6.]

Applying these principles to the present facts, we are not persuaded defendant has established the high standard required for downgrading his sentence. See Megargel, 143 N.J. at 500. Even accepting that the mitigating factors substantially outweigh the aggravating factor, we see no compelling reasons for the downgrade "in addition to, and separate from" those mitigating factors. Id. at 502. We therefore decline to exercise original jurisdiction to resentence defendant as if he had been convicted of a less serious crime than the one he actually committed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3893-22